**The PEOPLE of the State of Colorado,
Plaintiff-Appellee,**

v.

**William G. RILEY,
Defendant-Appellant.**

**No. 83SA247.**

Supreme Court of Colorado,
En Banc.

Nov. 18, 1985.

Duane Woodard, Atty. Gen., Norman S. Early, Jr., Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Michael L. Kane, Deputy Dist. Atty., Denver, for plaintiff-appellee.

Gerash & Robinson, Scott H. Robinson, Denver, for defendant-appellant.

QUINN, Chief Justice.

The defendant, William Riley, appeals his conviction of seven counts of fraudulent and other prohibited practices in connection with the sale of securities. §§ 11–51–123(1) and 11–51–124, 4 C.R.S. (1985 Supp.). He challenges his conviction on the following grounds: that section 11–51–123(1), 4 C.R.S. (1985 Supp.), is unconstitutionally vague, both on its face and as applied in this case, in violation of due process of law; that the trial court erred in instructing the jury that good faith is not a defense to securities fraud; that he was denied his constitutional right to effective assistance of counsel; and that the trial court erred in admitting evidence and in instructing the jury on flight and concealment. We reject the defendant's constitutional challenges to section 11–51–123(1), 4 C.R.S. (1985 Supp.), but conclude that the trial court's instruction to the jury that good faith is not a defense to securities fraud resulted in nullifying the *mens rea* element of the crimes charged against the defendant. We accordingly reverse the judgment of conviction and remand for a new trial. Since a new trial is required, we do not address the other issues raised by the defendant.

I.

The defendant was indicted on 28 counts of securities fraud allegedly committed on various dates between November 1979 and May 1981. He was ultimately tried on ten counts (Counts A–J) of fraudulent and prohibited practices relating to the sale of securities of Income Realty and Mortgage, Inc. (Income Realty). Count A alleged that the defendant made three types of false

statements to bond purchasers as part of the practices and course of business of Income Realty and that these statements operated as a fraud in connection with the sale of the bonds in violation of section 11–51–123(1)(c), 4 C.R.S. (1985 Supp.). These false statements were, as alleged in Count A, basically as follows:

(1) that the bonds were secured or backed by designating groups of installment land contracts, sometimes referred to as mortgages, which installment land contracts or mortgages were specifically set aside for that purpose; and

(2) that, although the bonds did not mature for payment of principal until ten years from the date of issue, Income Realty nonetheless would buy back bonds upon the purchaser's request and return the investments prior to the date of maturity; and

(3) that investment in the bonds was a safe investment and involved little or no risk.

It was further alleged in Count A that the defendant, as part of the practices and course of business of Income Realty, failed to disclose to purchasers of the bonds the following facts: (1) that the offering circulars registered with the Colorado Division of Securities contained information that the bonds were unsecured corporate obligations of Income Realty; (2) that there were no installment land contracts or mortgages assigned or pledged to secure payment of the principal or interest due on the bonds; (3) that the offering circulars registered with the Colorado Division of Securities contained information indicating that the bonds were subordinated to existing and future indebtedness of Income Realty; (4) that the offering circulars registered with the Colorado Division of Securities contained information indicating that the bonds were redeemable prior to the maturity dates only at the option of Income Realty and that the offering circulars contained no provision granting purchasers the right to require Income Realty to buy back the bonds and return the purchasers' investments prior to the maturity dates stated on the bonds; (5) that the offering circulars registered with the Colorado Division of Securities contained information indicating that the investment in the bonds was subject to a high degree of risk; and (6) that in some cases the offering circulars registered with the Colorado Division of Securities were actually withheld from purchasers of the bonds and never delivered to them or were delivered only after the purchases had been completed.

The next five counts (Counts B through F) alleged that the same false statements alleged in Count A were made to other named purchasers and constituted untrue statements of material fact violative of section 11–51–123(1)(b), 4 C.R.S. (1985 Supp.). Count G alleged that the defendant engaged in practices that operated as a fraud in connection with the sale of the corporate stock of Income Realty to purchasers, specifically because the offering circular contained information indicating that Income Realty would have, upon completion of the sale of Series C bonds, $6,994,000 of outstanding subordinated debentures but omitted to mention the fact that the bonds were sold to investors by means of the following false representations: that the bonds were secured by installment land contracts, sometimes referred to as mortgages, and that Income Realty would buy back the bonds and return principal investments prior to the maturity date of the bonds.[1]

In submitting the charges to the jury, the court instructed on the essential ele-

1. Three counts (Counts H through J) alleged that the defendant, in making statements to purchasers of Income Realty stock, violated section 11–51–123(1)(b), 4 C.R.S. (1985 Supp.), by omitting to state material facts necessary to make the statements not misleading in light of the circumstances under which they were made. The jury acquitted the defendant of counts H through J. An eleventh count (Count K) charged the defendant with conspiracy to commit securities fraud. This count was withdrawn prior to trial.

ments of securities fraud, including the culpable mental state of acting "willfully." A separate instruction stated that "knowingly" is synonymous with "willfully" and defined these terms as follows:

A person acts "knowingly" or "willfully" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowingly" or "willfully" with respect to a result of his conduct when he is aware that his conduct is practically certain to cause the result.

The court also instructed the jury, over the defendant's objection, that "[g]ood faith is not a defense to the charge of Fraudulent and Other Prohibited Practices in the Sale of Securities."

The jury returned guilty verdicts to Counts A through G and, after denying the defendant's motion for a new trial, the court imposed a combination of concurrent and consecutive sentences which cumulatively resulted in a total sentence of five years plus one year of parole.

The defendant's appeal was originally filed in the court of appeals, but was transferred to this court because of the defendant's constitutional challenges to section 11–51–123(1), 4 C.R.S. (1985 Supp.). *See* §§ 13–4–102(1)(b) and 13–4–110, 6 C.R.S. (1973). We first address the defendant's constitutional challenges to section 11–51–123(1) 4 C.R.S. (1985 Supp.), and then the propriety of the trial court's instruction that good faith was not a defense to the charges submitted to the jury.

## II.

It is necessary to address the defendant's constitutional challenge to section 11–51–123(1), 4 C.R.S. (1985 Supp.), because if the statute is either facially unconstitutional or unconstitutional as applied, the defendant would not be subject to retrial. We first consider the defendant's argument

that the statute is facially void for vagueness and then his argument that the statute is unconstitutionally vague as applied to the conduct for which he was prosecuted in this case.

### A.

Section 11–51–123(1), 4 C.R.S. (1985 Supp.), states:

(1) It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly:

(a) To employ any device, scheme, or artifice to defraud;

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

The defendant claims that the terms "material," "fraud" and "deceit" are too vague to give an accused adequate notice of the conduct proscribed by the statute, with the result that the jury is impermissibly allowed to set its own standards of criminal responsibility in each case. We find this argument devoid of merit.

■ A statute is presumed to be constitutional in the first instance, and the burden falls upon the party attacking the statute to establish its unconstitutionality beyond a reasonable doubt. *E.g., People v. Alexander,* 663 P.2d 1024 (Colo.1983); *Bollier v. People,* 635 P.2d 543 (Colo.1981); *People v. Summit,* 183 Colo. 421, 517 P.2d 850 (1974). The controlling consideration in a void-for-vagueness challenge is whether the challenged statute is sufficiently specific to apprise persons of ordinary intelligence of the particular conduct that will subject them to criminal liability. *Connally v. General Construction Co.,* 269 U.S.

385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *People ex rel. City of Arvada v. Nissen,* 650 P.2d 547 (Colo.1982); *People v. Jennings,* 641 P.2d 276 (Colo.1982); *People v. Blue,* 190 Colo. 95, 544 P.2d 385 (1975); *People v. Cardwell,* 181 Colo. 421, 510 P.2d 317 (1973). We hasten to add, however, that "while a statute must be sufficiently specific to give fair warning of the proscribed conduct, it often must remain sufficiently general 'to address the essential problem under varied circumstances.'" *Alexander,* 663 P.2d at 1027 (quoting *Colorado Auto and Truck Wreckers Ass'n v. Department of Revenue,* 618 P.2d 646, 651 (Colo.1980)).

■ Although this court has not previously addressed the constitutionality of section 11–51–123(1) of the Colorado Securities Act, we have recognized that, insofar as the provisions of the Colorado statute parallel those of the federal counterparts, judicial authorities construing the federal counterparts are highly persuasive. *Lowery v. Ford Hill Investment Co.,* 192 Colo. 125, 556 P.2d 1201 (1976). Section 11–51–123(1) is identical to section 101 of the Uniform Securities Act. 7B U.L.A. 516 (1985); *see Ohio v. Peterson, Lowry, Rall, Barber & Ross,* 472 F.Supp. 402, 405 (D.Colo.1979), *aff'd* 651 F.2d 687 (10th Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981); *People v. Terranova,* 38 Colo.App. 476, 480, 563 P.2d 363, 365 (1976). Section

101 of the Uniform Securities Act is substantially identical to Rule 10b–5 of the Securities and Exchange Commission,[2] which in turn was modeled on section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1982).[3] *See Commissioners' Comment* 7B U.L.A. 516 (1985); *Peterson, Lowry, et al.,* 472 F.Supp. at 405; *Terranova,* 38 Colo.App. at 480, 563 P.2d at 365–366.

■ In *Coplin v. United States,* 88 F.2d 652, 657 (9th Cir.), *cert. denied,* 301 U.S. 703, 57 S.Ct. 929, 81 L.Ed. 1357 (1937), the Ninth Circuit Court of Appeals subjected section 17(a) to critical scrutiny and found its provisions to pass constitutional muster in the face of a void-for-vagueness challenge:

> [W]e find no fatal ambiguity or indefiniteness, such as might prove a pitfall to any person, in the language of the appellants, "attempting to obey the law." No honest and reasonable citizen could have difficulty in understanding the meaning of "untrue," "material fact," "any omission to state a material fact," "in the light of the circumstances under which they were made," or "misleading." All these terms, it is true, call for interpretation in accordance to the facts of a given case. So do the terms "malice," "probable cause," "self-defense," "negligence,"

---

2. Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (1985), states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentalities of interstate commerce, or by the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

3. Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1982), states as follows:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

"fraud," "duress," "justification," and thousands of other expressions well established in the law.

Isolated from their setting, any of the foregoing terms might be said to be "indefinite" or "uncertain"; but, "in the light of the circumstances under which" they are used, their meaning is clear enough to the reasonable and well-intentioned citizen. "That is certain which may be rendered certain."

The Second Circuit Court of Appeals in *United States v. Persky*, 520 F.2d 283 (2d Cir.1975), rejected a similar void-for-vagueness challenge to Rule 10b–5 of the Securities and Exchange Commission. *See also Todd & Co. v. SEC*, 557 F.2d 1008 (3d Cir.1977); *United States v. Pray*, 452 F.Supp. 788 (M.D.Pa.1978). We find these cases persuasive and thus hold that section 11–51–123(1), 4 C.R.S. (1985 Supp.), is sufficiently explicit in its terms to inform persons of ordinary intelligence of the conduct that is criminally proscribed.[4]

### B.

Having determined that the statute is facially constitutional, we turn to the defendant's claim of unconstitutional application. The defendant's argument, as we understand it, appears to proceed as follows: that his statements to purchasers of Income Realty bonds and stock were partially true; that these statements can be rendered criminal only by a subtle application of the statutory terminology of section 11–51–123(1), 4 C.R.S. (1985 Supp.), to the statements; and that such statutory application to statements that are partially true cannot be squared with due process of law. We find the defendant's argument untenable.

■ A half-truth which amounts to deceit is a fraudulent statement. *Coplin*, 88 F.2d at 657. It requires no linguistic subtlety on the part of a person of ordinary intelligence to know that, in connection with the sale of a security, section 11–51–123(1), 4 C.R.S. (1985 Supp.), encompasses untrue statements of material fact, the omission of a material fact essential to make the statement not misleading in light of the circumstances under which it is made, and any act or practice that operates or would operate as a fraud or deceit upon a purchaser. In this case the essence of the charges against the defendant relate to his willfully making untrue and misleading statements to purchasers of Income Realty bonds and stock. These statements related to the nature of the property interests securing such investments, the prospect of the purchaser receiving a return of the investment upon demand, and the safety of such investments.

We have no hesitation in concluding that the acts charged against the defendant are well within the outer limits of the statutory proscriptions of section 11–51–123(1), 4 C.R.S. (1985 Supp.). We therefore find no unconstitutional application of the statute to the conduct charged against the defendant in this case.

### III.

We now consider whether the trial court's instruction that "[g]ood faith is not

---

**4.** Our holding on the facial validity of section 11–51–123(1), 4 C.R.S. (1985 Supp.), finds support in our prior cases. Although we have not dealt with the terms "material" and "fraud" in the context of section 11–51–123(1), 4 C.R.S. (1985 Supp.), such terms have been defined and applied in many cases. *See, e.g., Ackmann v. Merchants Mortgage & Trust Corp.*, 645 P.2d 7 (Colo.1982), *on remand*, 659 P.2d 697 (Colo.App. 1982), *rev'd sub nom. Kopeikin v. Merchants Mortgage & Trust Corp.*, 679 P.2d 599 (Colo. 1984) (concealment of material fact giving rise to liability for fraudulent concealment); *People v. Maestas*, 199 Colo. 143, 606 P.2d 849 (1980) (definition of term "materially false" for purpose of first degree perjury statute); *Beathune v. Colorado Dealer Licensing Board*, 198 Colo. 483, 601 P.2d 1386 (1979) (the term "fraudulent business practice" sufficiently specific); *Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458 (1937) (concealment of material fact as basis of civil claim for fraudulent concealment); *United States Home Co. v. O'Conner*, 48 Colo. 354, 110 P. 74 (1910) (false representations as a predicate for civil fraud).

a defense to the charge of Fraudulent and Other Prohibited Practices in the Sale of Securities" constitutes reversible error. We conclude that it does.

Section 11–51–124(1.5), 4 C.R.S. (1985 Supp.), requires that any conviction for violating section 11–51–123(1), 4 C.R.S. (1985 Supp.), be supported by proof that the defendant acted "willfully." [5] The Colorado Criminal Code, which governs the construction of "any offense defined in any statute of this state," § 18–1–103(1), 8 C.R.S. (1978), equates the culpable mental state of "willfully" with the culpable mental state of "knowingly." Section 18–1–501(6), 8 C.R.S. (1978), states:

A person acts "knowingly" or "willfully" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowingly" or "willfully", with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result.

When an accused is charged with violating section 11–51–123(1)(b), 4 C.R.S. (1985 Supp.), by making an untrue or misleading statement of material fact in connection with the sale of securities, it is incumbent upon the prosecution to prove beyond a reasonable doubt that the accused was *aware* that he was making an untrue statement of material fact or was *aware* that he omitted to state a material fact necessary to make the statement not misleading in light of the circumstances under which it was made. *People v. Blair*, 195 Colo. 462, 469, 579 P.2d 1133, 1139 (1978). Similarly, when an accused is charged with engaging in any act or practice that operates as a fraud or deceit upon any person in violation of section 11–51–123(1)(c), 4

C.R.S. (1985 Supp.), it is incumbent upon the prosecution to prove beyond a reasonable doubt that the accused was *aware* that he was engaging in an act or practice that would operate as a fraud or deceit upon any person. Violations of subsections 11–51–123(1)(b) and (c), 4 C.R.S. (1985 Supp.), are clearly not strict liability offenses. Essential to a conviction is proof beyond a reasonable doubt that the defendant acted with the culpable mental state of "willfully."

The effect of instructing the jury that good faith is not a defense to a securities fraud prosecution was to create a substantial risk that the jury would find the defendant guilty of violating section 11–51–123(1)(b), 4 C.R.S. (1985 Supp.), even if the defendant made false or misleading statements in the good faith belief that they were true. The instruction created a similar risk that the jury would find the defendant guilty of violating section 11–51–123(1)(c), 4 C.R.S. (1985 Supp.), as long as the defendant engaged in a practice or course of business that operated as a fraud or deceit upon a person even if the defendant in good faith believed the practice or course of business was not fraudulent or deceitful. The instruction was thus irreconcilably at odds with the court's instruction on the culpability element of willfulness.

We recognize that in determining the propriety of a particular jury instruction the instructions should be viewed as a whole. *People v. Travis*, 192 Colo. 169, 558 P.2d 579 (1976). If, however, two instructions are in direct conflict on the requisite culpable mental state, and one of the instructions is an incorrect and clearly prejudicial statement of law, the fact that the other instruction contains a correct statement of law cannot cure the error. *E.g.,*

**5.** At the time of the defendant's conviction, the culpability requirement of acting willfully as the basis of a criminal violation of section 11–51–123(1) was set forth in section 11–51–124(1). *See* ch. 119, sec. 1, § 11–51–124, 1981 Colo.Sess.

Laws 632, 654. The statute was amended in 1984 moving the culpability requirement for finding a criminal violation of section 11–51–123 from section 11–51–124(1) to section 11–51–124(1.5), 4 C.R.S. (1985 Supp.).

*McFarland v. United States,* 174 F.2d 538 (D.C.Cir.1949); *Haigler v. United States,* 172 F.2d 986 (10th Cir.1949); *Magwire v. People,* 77 Colo. 149, 235 P. 339 (1925).

■ The trial court's instruction that good faith is not a defense to a securities fraud prosecution was obviously extracted from this court's decision in *Blair.* The court stated in *Blair,* in the course of upholding the trial court's rejection of the defendant's tendered instruction on good faith as an absolute defense to charges of securities fraud, that "[g]ood faith is not a proper defense in this case." *Blair,* 195 Colo. at 468, 579 P.2d at 1139.[6] We again caution trial courts about the danger of taking abstract statements from court opinions and formulating instructions of law based thereon.

> [L]anguage used in an opinion pertinent to the issues and the determined facts in that case may be a proper expression of the law as related to those facts and issues, and pertinent to the decision of the case, and yet may not be sufficiently general, clear, or accurate to serve as a satisfactory or full instruction to a jury.

*Cohen v. People,* 106 Colo. 245, 247, 103 P.2d 479, 480 (1940); *accord Evans v. People,* 706 P.2d 795 (Colo.1985).

It is one thing, as in *Blair,* to fail to give an instruction on good faith as a defense to securities fraud, but it is quite another matter to affirmatively instruct the jury, as here, that good faith is no defense at all. If no instruction on good faith had been given in this case, the jury would have been left with proper instructions on the culpable mental state of willfully. By giving the

good faith instruction, however, the trial court presented the jury with irreconcilable statements about the requisite culpability for a securities fraud violation. A conviction cannot be permitted to rest on such an equivocal direction to the jury on one of the basic elements of the crime. *Bollenbach v. United States,* 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946); *see Chambers v. People,* 682 P.2d 1173 (Colo.1984); *People v. Mascarenas,* 666 P.2d 101 (Colo. 1983); *People v. Archuleta,* 180 Colo. 156, 503 P.2d 346 (1972). In view of the significance of the culpability element to the ultimate finding of guilt in a prosecution for violating section 11–51–123(1), 4 C.R.S. (1985 Supp.), we cannot view the trial court's error as harmless.

The judgment is reversed and the cause is remanded for a new trial.

---

**6.** The *Blair* opinion cited *United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 769, 50 L.Ed.2d 771 (1976), *on remand,* 563 F.2d 659 (4th Cir.1977), *cert. denied,* 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978), in support of the statement that "[g]ood faith is not a proper defense in this case." *Pomponio* was a tax fraud case and the instruction there stated that good motive alone is never a defense to a crime except as it bears on intent. Good motive is quite distinct from good faith, however, especially as good faith bears on the requisite culpable mental state of "willfully." Reliance on *Pomponio,* therefore, would appear to be misplaced, at least as relates to the proposition that good faith has no bearing

on the requisite culpable mental state of "willfully" in a securities fraud prosecution. We do not mean to imply that a trial court is obliged to instruct the jury that good faith is a defense to securities fraud. What is required is that the trial court properly instruct on the meaning of "willfully" and make clear that this culpable mental state applies to violations of section 11–51–123. This requirement would have been satisfied in this case if the trial court had not included in its instructions the statement that good faith is not a defense to a securities fraud charge.