1
 2025 CO 43 The People of the State of Colorado, Petitioner: v. Kelly James Schnorenberg. No. 23SC776
Supreme Court of Colorado, En Banc
June 23, 2025

 Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 19CA223

 Attorneys for Petitioner: Philip J. Weiser, Attorney General,
 Trina K. Kissel, Senior Assistant Attorney General &
 Assistant Solicitor General Denver, Colorado.

 Attorneys for Respondent: Law Office of Lynn C. Hartfield,
 LLC Lynn C. Hartfield Denver, Colorado.

 JUSTICE GABRIEL delivered the Opinion of the Court, in which
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD,
 JUSTICE HART, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER
 joined.

 OPINION

 GABRIEL JUSTICE.

 ¶1
 In this securities fraud case, we granted certiorari to
 determine whether the court of appeals division below
 misconstrued the law in concluding that the trial court had
 reversibly erred by limiting defendant Kelly James
 Schnorenberg's testimony, and not giving a
 defense-tendered jury instruction, about the advice of
 counsel. This question, in turn, requires us to decide
 whether the mens rea of "willfully" applies to each
 element of securities fraud under subsections 11-51-501(1)(b)
 and (c), C.R.S. (2024), of the Colorado Securities Act
 ("CSA").

 ¶2
We now conclude that the mens rea of "willfully,"
 which, for purposes here, is synonymous with
 "knowingly," applies to every element under
 subsections 11-51-501(1)(b) and (c). Accordingly, to convict
 a defendant under subsection 11-51-501(1)(b), the People must
 prove, among other things, that the defendant knew that the
 false statement or omitted fact at issue was material.
Likewise, under subsection 11-51-501(1)(c), the People must
 prove that the defendant knew that their act, practice, or
 course of business operated or would operate as a fraud or
 deceit on another person. As a result, we further conclude
 that Schnorenberg's proffered testimony about the advice
 of his counsel was relevant to whether he had the requisite
 mens rea and that, therefore, the trial court reversibly
 erred in excluding this testimony.

 ¶3
 Accordingly, we affirm the judgment of the division below and
 remand this case for a new trial on the counts at issue.

 I.
Facts and Procedural History

 ¶4
 In 2008, Schnorenberg formed KJS Marketing, Inc. to secure
 funding and recruit agents for insurance companies. Between
 2009 and 2015, KJS solicited over $15 million from
 approximately 250 investors. Pursuant to investment
 agreements and promissory notes between KJS and these
 investors, the investors provided Schnorenberg with funding
 with the understanding that they would be repaid at 12%
 interest per year.

 ¶5
 In soliciting these investments, Schnorenberg did not inform
 his investors that the Colorado Division of Securities had
 sued him, that he had been permanently enjoined from selling
 investments and securities in Colorado, or that he had filed
 for bankruptcy five years before forming KJS. He also did not
 inform his investors that he had failed to repay prior
 investors; his companies had carried large debt loads; civil
 judgments had been entered against him and his companies for
 unpaid debts, and he had not satisfied those judgments; some
 of his companies had failed; and he had failed to provide his
 prior investors with quarterly and annual financial
 statements for his companies.

 ¶6
 Schnorenberg was subsequently charged with, among other
 things, twenty-five counts of securities fraud under section
 11-51-501. Twenty-four of

 these counts were premised on materially false statements or
 material omissions under subsection 11-51-501(1)(b), and one
 was premised on a fraudulent course of business under
 subsection 11-51-501(1)(c).

 ¶7
 As pertinent here, Schnorenberg planned to defend against
 these charges by arguing that he had acted in good faith
 reliance on the advice of his securities lawyer, Hank
 Schlueter. To this end, Schnorenberg intended to call
 Schlueter as a witness, but Schlueter was due to be out of
 the country for the duration of Schnorenberg's trial.
Accordingly, Schnorenberg moved for a continuance so that
 Schlueter could appear. The trial court, however, denied this
 motion, and the case proceeded to trial.

 ¶8
 On the first day of trial, Schnorenberg again moved for a
 continuance, asserting that he needed Schlueter's
 testimony for his defense. The People opposed this motion,
 and the trial court denied it.

 ¶9
 Trial thus commenced, and Schnorenberg, who testified in his
 own defense, sought to testify regarding the advice that
 Schlueter had given him. Specifically, on direct examination,
 Schnorenberg's defense attorney asked him if he had
 consulted with his securities lawyer as to "whether the
 bankruptcy or the injunctions were material in that they
 needed to be disclosed to anybody." The People objected
 on relevance grounds, but the court overruled that objection.
Defense counsel then asked Schnorenberg whether, based on his
 conversations

 with his securities attorney, he believed he was required to
 make the foregoing disclosures. The People again objected,
 this time on hearsay grounds. Defense counsel responded that
 the proffered testimony was being offered solely for its
 effect on Schnorenberg as the listener (i.e., not for the
 truth of the matter asserted). The court, however, sustained
 the People's hearsay objection.

 ¶10
 Subsequently, defense counsel proposed a limiting instruction
 that would have confirmed that the foregoing proffered
 testimony was being offered for "the limited purpose of
 showing the effect of the attorney's advice on Mr.
 Schnorenberg." The court, however, denied the request
 for this limiting instruction, adhering to its original
 ruling excluding this testimony on hearsay grounds. As a
 result, Schnorenberg could not testify as to the specific
 advice that Schleuter had given him. Instead, he was limited
 to testifying, in general terms, that he had acted after
 obtaining advice from counsel.

 ¶11
 Notwithstanding the foregoing restrictions on his evidence,
 Schnorenberg requested that the court instruct the jury, as
 part of its final charge, that "[i]n determining whether
 Mr. Schnorenberg acted willfully, you may consider the
 evidence as it relates to good faith reliance on the advice
 of counsel." The court, however, refused to give this
 proposed instruction, and Schnorenberg was eventually
 convicted on the twenty-five counts on which he was tried.

 ¶12
 Schnorenberg then appealed, and a unanimous division of the
 court of appeals vacated seven of his convictions as
 time-barred, reversed the remaining convictions, and remanded
 the case for further proceedings. People v.
 Schnorenberg, 2023 COA 82, ¶¶ 1, 6, 541 P.3d
 1, 3-4. As to the non-time-barred convictions, which are the
 charges now before us, the division concluded that the trial
 court had erred in preventing Schnorenberg from testifying as
 to the advice that he had received from his securities lawyer
 regarding the disclosures that he needed to make to
 prospective investors. Id. at ¶ 6, 541 P.3d at
 4. In reaching this conclusion, the division observed that a
 defendant's good faith reliance on the advice of counsel
 could negate the mens rea element of the securities fraud
 counts at issue. Id. at ¶¶ 20-22, 541 P.3d
 at 6-7. The division further determined that
 Schnorenberg's proffered testimony regarding the advice
 that he had received from counsel was not hearsay, and,
 regarding CRE 403, which the People raised for the first time
 on appeal, the division opined that even had a CRE 403
 objection been preserved, that rule did not support the
 exclusion of such testimony. Id. at ¶¶
 27-35, 541 P.3d at 7-9. Accordingly, the division concluded
 that the trial court had erred in excluding
 Schnorenberg's proffered testimony regarding the advice
 of his counsel. Id. at ¶ 35, 541 P.3d at 8-9.

 ¶13
 Having so decided, the division proceeded to consider whether
 the trial court had also erred in declining to instruct the
 jury that good faith reliance on the

 advice of counsel was relevant to whether Schnorenberg had
 acted willfully. Id. at ¶ 36, 541 P.3d at 9.
The division concluded that it had and that the foregoing
 errors were not harmless and required reversal. Id.
 at ¶¶ 36-39, 541 P.3d at 9.

 ¶14
The People then petitioned this court for a writ of
 certiorari, and we granted their petition.

 II.
Analysis

 ¶15
We begin by setting forth the applicable standard of review.
We then address whether the trial court erred in excluding
 Schnorenberg's testimony about the advice of his counsel
 and conclude that it did and that this error was not
 harmless. Finally, because the issue is likely to arise again
 on remand, we address whether Schnorenberg is entitled to a
 jury instruction advising the jurors that, in determining
 whether Schnorenberg acted willfully, they may consider good
 faith reliance on the advice of counsel.

 A.
Standard of Review

 ¶16
We review a trial court's ruling on the admissibility of
 evidence for an abuse of discretion, Bly v. Story,
 241 P.3d 529, 535 (Colo. 2010), but we review legal questions
 de novo, Clark v. People, 2024 CO 55, ¶ 65, 553
 P.3d 215, 230. A trial court abuses its discretion when its
 ruling is "manifestly arbitrary, unreasonable, or
 unfair, or based on a misapprehension of the law."
Cath. Health Initiatives Colo. v. Earl Swensson Assocs.,
 Inc., 2017 CO 94, ¶ 8, 403 P.3d 185, 187.

 ¶17
 The issue of the admissibility of Schnorenberg's
 testimony requires us to determine the elements of securities
 fraud under subsections 11-51-501(1)(b) and (c) to which the
 mens rea of "willfully" applies. This is a matter
 of statutory construction that we review de novo. See
People v. Cross, 127 P.3d 71, 73-74 (Colo. 2006),
 abrogated on other grounds by Counterman v.
 Colorado, 600 U.S. 66, 77-78 (2023).

 ¶18
 Lastly, we review de novo whether a jury instruction
 correctly states the law, and we review a trial court's
 decision as to whether to give a particular instruction for
 an abuse of discretion. Day v. Johnson, 255 P.3d
 1064, 1067 (Colo. 2011).

 B.
 Advice-of-Counsel Testimony

 ¶19
The People concede that Schnorenberg's testimony
 regarding the advice of his counsel was not hearsay, as the
 trial court had ruled. The People nonetheless contend that
 the trial court did not err in excluding this evidence
 because it was not relevant under CRE 401. Specifically, the
 People assert that the testimony was not relevant because, in
 their view, the good faith reliance on the advice of counsel
 is not a defense to the crime of securities fraud. We are not
 persuaded.

 ¶20
 Relevant evidence is "evidence having any tendency to
 make the existence of any fact that is of consequence to the
 determination of the action more probable or less probable
 than it would be without the evidence." CRE 401. CRE 401
 thus

 encompasses two requirements: materiality and probative
 value. Fletcher v. People, 179 P.3d 969, 974 (Colo.
2007). To be material, evidence must relate to a fact of
 consequence to the determination of the case. Id.
This, in turn, requires a court to consider the elements of
 the offense charged. Id. Evidence is probative if it
 has "a tendency to prove the proposition for which it is
 offered." Id.

 ¶21
 Subsection 11-51-501(1)(b) provides:

It is unlawful for any person, in connection with the offer,
 sale, or purchase of any security, directly or indirectly . .
 . [t]o make any untrue statement of a material fact or to
 omit to state a material fact necessary in order to make the
 statements made, in the light of the circumstances under
 which they are made, not misleading ....

 ¶22
 Subsection 11-51-501(1)(c), in turn, provides, "It is
 unlawful for any person, in connection with the offer, sale,
 or purchase of any security, directly or indirectly . . .
 [t]o engage in any act, practice, or course of business which
 operates or would operate as a fraud or deceit upon any
 person."

 ¶23
 As charged here, the requisite mental state for violations of
 subsections 11-51-501(1)(b) and (c) is "willfully."
§ 11-51-603(1), C.R.S. (2024); accord People v.
 Riley, 708 P.2d 1359, 1365 (Colo. 1985); People v.
 Blair, 579 P.2d 1133, 1137 (Colo. 1978).
"Willfully" is synonymous with
 "knowingly," and a person acts willfully or
 knowingly with respect to conduct or a circumstance at issue
 "when he is aware that his conduct is of such nature or
 that such circumstance exists." § 18-1-501(6),
 C.R.S. (2024);

see also Riley, 708 P.2d at 1365 (noting that the
 Colorado Criminal Code equates the culpable states of
 "willfully" and "knowingly").

 ¶24
 The dispute before us concerns the elements of securities
 fraud to which the mens rea of "willfully" applies.
The People contend that it applies only to the acts of making
 an untrue statement or omitting facts within the meaning of
 subsection 11-51-501(1)(b), or to a defendant's
 conducting an act, practice, or course of business under
 subsection 11-51-501(1)(c). Schnorenberg responds that
 "willfully" also applies to the element of
 materiality under subsection 11-51-501(1)(b) and to the
 element of fraud or deceit under subsection 11-51-501(1)(c).
Thus, in his view, the People were required to prove that he
 knew that his allegedly false statements and omitted
 information were material and that he knew that his act,
 practice, or course of business was fraudulent or deceitful.
We agree with Schnorenberg.

 ¶25
Section 18-1-503(4), C.R.S. (2024), provides, "When a
 statute defining an offense prescribes as an element thereof
 a specified culpable mental state, that mental state is
 deemed to apply to every element of the offense unless an
 intent to limit its application clearly appears." We
 perceive no such intent in subsections 11-51-501(1)(b) or
 (c). Nor do the People point to language in those provisions
 indicating such an intent. Accordingly, we conclude that the
 mens rea of "willfully" applies to each element of
 the offenses defined by section 11-51-501(1).

Thus, to be convicted under subsection 11-51-501(1)(b), the
 defendant (1) must have knowingly made an untrue statement of
 a material fact or omitted a material fact necessary to make
 a statement made, in light of the circumstances under which
 it was made, not misleading; and (2) must have known
 that the untrue statement or omitted fact was material.
Similarly, to be convicted under subsection 11-51-501(1)(c),
 the defendant must have knowingly engaged in an act,
 practice, or course of business and must have known
 that this conduct would operate as a fraud or deceit on
 another person.

 ¶26
 The question thus becomes whether, in light of our conclusion
 that the mens rea of "willfully" applies to each
 element of the offense of securities fraud, a defendant's
 reliance on advice of counsel is relevant in a securities
 fraud prosecution. We conclude that it is.

 ¶27
 As many courts have concluded, the good faith reliance on the
 advice of counsel tends to negate a finding that a defendant
 had the requisite mens rea for securities fraud. See,
 e.g., SEC v. Snyder, 292 Fed.Appx. 391, 406
(5th Cir. 2008) (unpublished opinion); Howard v.
 SEC, 376 F.3d 1136, 1147-48, 1147 n.19 (D.C. Cir. 2004);
Bisno v. United States, 299 F.2d 711, 719 (9th Cir.
1961); People v. Hoover, 165 P.3d 784, 792
(Colo.App. 2006). Specifically, in the context of subsection
 11-51-501(1)(b), good faith reliance on the advice of counsel
 could negate a finding that a defendant knowingly misstated
 or omitted a material fact. See People v.
 Terranova,

563 P.2d 363, 365-67 (Colo.App. 1976); cf. United States
 v. Peterson, 101 F.3d 375, 381-82, 381 n.5 (5th Cir.
1996) (affirming the district court's issuance of a jury
 instruction that stated, in pertinent part, "To decide
 whether such reliance [on the advice of counsel] was in good
 faith, you may consider whether the Defendant sought the
 advice of a competent attorney concerning the material
 fact allegedly omitted or misrepresented"). A fact
 is material "if there is a substantial likelihood that a
 reasonable investor would consider the matter important in
 making an investment decision." Goss v. Clutch
 Exch., Inc., 701 P.2d 33, 36 (Colo. 1985).

 ¶28
 Accordingly, we conclude that good faith reliance on the
 advice of counsel is a relevant consideration for the jury in
 evaluating whether a defendant acted willfully with respect
 to the materiality requirement of subsection 11-51-501(1)(b).
See Howard, 376 F.3d at 1147. Likewise, a defendant
 who relied on counsel's advice that a course of business
 was not fraudulent may not have had the requisite mens rea
 for conviction under subsection 11-51-501(1)(c) (because they
 might not have known that they were defrauding or deceiving
 someone). See Hoover, 165 P.3d at 792 ("Advice
 of counsel is relevant to the fraudulent practices aspect of
 a securities charge if a defendant can show that he or she
 relied in good faith on advice that his or her actions were
 legal, to show lack of scienter."); see also
Snyder, 292 F. App'x. at 406 ("[R]eliance on
 counsel's advice is not an affirmative

 defense.... Rather, '[i]t is simply a means of
 demonstrating good faith and represents possible evidence of
 an absence of any intent to defraud.'") (second
 alteration in original) (quoting Peterson, 101 F.3d
 at 381). (Hoover's reference to a mens rea of
 scienter, as opposed to willfulness, does not change the
 outcome here because our decision rests on the fact that
 "willfully" applies to every element of the
 offense, not on any distinction between willfulness and
 scienter.)

 ¶29
 This conclusion comports with our decision in Riley,
708 P.2d at 1364-65. There, we determined that the trial
 court had erred in instructing the jury that good faith is
 not a defense to securities fraud. Id. We explained
 that such an instruction was improper because it created a
 substantial risk that a jury would convict a defendant under
 the precursor to subsection 11-51-501(1)(b) "even if the
 defendant made false or misleading statements in the good
 faith belief that they were true." Id. at 1365.
The instruction created a similar risk of conviction under
 the precursor to subsection 11-51-501(1)(c), "even if
 the defendant in good faith believed the practice or course
 of business was not fraudulent or deceitful."
Id. Thus, we explained that to convict a defendant
 under the precursor to subsection 11-51-501(1)(b), the
 prosecution was required to prove, beyond a reasonable doubt,
 that the defendant "was aware that he was
 making an untrue statement of material fact or was
 aware that he omitted to state a material fact
 necessary to make the statement not misleading in light of
 the circumstances under which it was

 made." Id. And we explained that to convict a
 defendant under the precursor to subsection 11-51-501(1)(c),
 the prosecution was required to prove, beyond a reasonable
 doubt, that the defendant "was aware that he
 was engaging in an act or practice that would operate as a
 fraud or deceit upon any person." Id.

 ¶30
 Longstanding precedent from divisions of our court of appeals
 is in accord. See Hoover, 165 P.3d at 792; see
 also Terranova, 563 P.2d at 366 ("[A]dvice of
 counsel is relevant to the fraudulent practices charge (Count
 3), and Terranova should be entitled to show, if he can, that
 he sold the securities based upon his good faith reliance on
 such advice that he could do so legally.").

 ¶31
 And our conclusion comports with federal courts'
 interpretation of the federal securities law analogues to our
 state securities laws. See, e.g., 17 C.F.R. §
 240.10b-5 (2025). This is pertinent here because the CSA
 states that its provisions "shall be coordinated"
 with the federal acts, statutes, and regulations to which
 Colorado securities laws refer, to the extent coordination is
 consistent with the purposes and provisions of those Colorado
 laws. § 11-51-101(3), C.R.S. (2024); see also Cagle
 v. Mathers Fam. Tr., 2013 CO 7, ¶ 19, 295 P.3d 460,
 467 (noting that federal authorities are "highly
 persuasive" when the language of the federal enactments
 parallels that of Colorado state securities laws) (quoting
Lowery v. Ford Hill Inv. Co., 556 P.2d 1201, 1204
(Colo. 1976)).

 ¶32
 Here, 17 C.F.R. § 240.10b-5 and section 11-51-501(1) are
 nearly identical. Accordingly, we may look to federal
 precedent, and federal courts have consistently held that the
 advice of counsel is relevant to the issue of mens rea in
 securities fraud prosecutions. See, e.g., United
 States v. Bush, 626 F.3d 527, 540 (9th Cir. 2010);
Howard, 376 F.3d at 1147; Peterson, 101
 F.3d at 381. For these reasons as well, we conclude that
 Schnorenberg's testimony concerning the advice of his
 counsel was relevant and, therefore, the district court erred
 in excluding it.

 ¶33
We are not persuaded otherwise by the People's assertion
 that this conclusion is contrary to our decision in
 Blair, 579 P.2d at 1138-40. In Blair, 579
 P.2d at 1138-39, we concluded that "specific
 intent" is not required to prove securities fraud under
 Colorado law, to the extent that "specific intent"
 would require a defendant to have purposely intended to
 violate the law. We hastened to add, however, that in this
 context, the use of the term "specific intent"
 confuses matters. Id. at 1139. We therefore
 disapproved of the use of that term, making clear that, as
 pertinent here, the mens rea should be phrased in terms of
 "willfully" or "knowingly." Id.

 ¶34
 Nowhere in Blair did we say that
 "willfully" applies only to the act of making a
 false statement or omission and not to the materiality
 requirement. And although we said that good faith was not a
 proper defense in that case, we made that statement in the
 context of rejecting a defense-tendered jury instruction that

 would have provided that good faith was an absolute
 defense to securities fraud. Id. As noted above,
 although good faith reliance on the advice of counsel is not
 an absolute defense, it may be relevant to the issue of the
 defendant's mens rea.

 ¶35
 For several reasons, we likewise are unpersuaded by the
 People's contention that we should not follow federal
 case law because the mens rea requirement under federal law
 is "scienter," which, according to the People,
 means "intent to deceive, manipulate or defraud,"
 rather than "willfully."

 ¶36
 First, notwithstanding the People's suggestion to the
 contrary, federal courts have not uniformly interpreted the
 term "scienter." Compare Ernst &Ernst v.
 Hochfelder, 425 U.S. 185, 193 n.12 (1976) (defining
 scienter as "a mental state embracing intent to deceive,
 manipulate, or defraud"), with Rehaif v. United
 States, 588 U.S. 225, 229 (2019) (defining scienter as
 requiring "the degree of knowledge sufficient to
 'mak[e] a person legally responsible for the consequences
 of his or her act or omission'") (alteration in
 original) (quoting Scienter, Black's Law
 Dictionary (10th ed. 2014)).

 ¶37
 Second, whether or not federal law and Colorado law require a
 different mens rea for securities fraud is immaterial
 because, as we have explained, the principal reason that
 evidence regarding the advice of counsel is relevant here is
 the fact that, under Colorado law, "willfully"
 applies to every element of subsections 11-51-501(1)(b) and
 (c), including the element of materiality.

 ¶38
 Finally, we are unpersuaded by the People's contention
 that our conclusion would recognize a mistake of law defense
 to securities fraud, notwithstanding the fact that a mistake
 of law defense is recognized only in limited circumstances.
See § 18-1-504(2), C.R.S. (2024). Essentially,
 the People argue that our conclusion would shield a defendant
 whose attorney told him that his actions were legal. This is
 incorrect. A mistake of law generally refers to "[a]
 sincere but mistaken belief as to whether particular conduct
 constitutes an offense." People v. Bossert, 722
 P.2d 998, 1008 (Colo. 1986). Here, it is immaterial whether
 Schnorenberg believed that his conduct was lawful; the
 question is whether he knew that any false statements or
 omitted information was material. Accordingly,
 notwithstanding the People's assertion to the contrary,
 our conclusion in this case does not recognize a mistake of
 law defense.

 C.
 CRE 403

 ¶39
The People next contend that the trial court excluded
 Schnorenberg's testimony "due to several concerns
 that fall under the umbrella of CRE 403" and that we
 should reverse the division's decision on CRE 403
 grounds. We again disagree.

 ¶40
 As an initial matter, we question whether the trial court, in
 fact, relied on CRE 403 in excluding Schnorenberg's
 testimony. As noted above, the trial court explicitly ruled
 on hearsay grounds, which the People now concede was error.

 ¶41
 Even had the trial court ruled on CRE 403 grounds, however,
 we are not persuaded that the division erred in refusing to
 affirm the trial court on that basis.

 ¶42
 CRE 403 provides, "Although relevant, evidence may be
 excluded if its probative value is substantially outweighed
 by the danger of unfair prejudice, confusion of the issues,
 or misleading the jury, or by considerations of undue delay,
 waste of time, or needless presentation of cumulative
 evidence." CRE 403 "strongly favors the admission
 of relevant evidence." People v. Greenlee, 200
 P.3d 363, 367 (Colo. 2009). Accordingly, a reviewing court
 must afford the evidence its maximum probative value and
 minimum prejudicial effect. Id.

 ¶43
 Applying this standard here, the evidence concerning what
 Schnorenberg's securities attorney had informed him
 regarding the materiality of the allegedly omitted
 information or his course of business could have been highly
 probative as to whether Schnorenberg had the requisite mental
 state under subsections 11-51-501(1)(b) or (c). This
 testimony went to the heart of his defense at trial.

 ¶44
 In contrast, we cannot say that the probative value of this
 evidence was substantially outweighed by the danger of unfair
 prejudice.

 ¶45
The People contend that the risk of unfair prejudice was
 substantial because (1) Schnorenberg's counsel was not
 available to be cross-examined; (2) had the evidence been
 admitted, the jurors might erroneously have accepted
 Schnorenberg's testimony as to what his counsel had
 advised him for the truth of

 the matter asserted; and (3) admitting this testimony would
 have allowed Schnorenberg to use the attorney-client
 privilege as both a sword and a shield.

 ¶46
We are unwilling to lay sole blame on Schnorenberg for his
 securities counsel's unavailability when the People
 objected to a continuance that would have allowed securities
 counsel to appear and the trial court denied
 Schnorenberg's request for a continuance.

 ¶47
 Regardless, any possible prejudice from Schnorenberg's
 testimony or his counsel's unavailability could have been
 mitigated through the use of a limiting instruction informing
 the jurors that they may not consider the testimony for the
 truth of the matter asserted. See, e.g.,
 Williams v. People, 724 P.2d 1279, 1284 (Colo. 1986)
(approving a limiting instruction advising the jury that some
 of the evidence that it had heard could be considered only
 for a limited purpose); People v. Smalley, 2015 COA
 140, ¶ 30, 369 P.3d 737, 744 (concluding that a limiting
 instruction provided by the trial court had adequately
 communicated to the jury the limited nonhearsay purpose for
 which the jury could consider the statements at issue). And
 cross-examination of Schnorenberg likewise could have
 mitigated possible prejudice. See Kelly v.
 Haralampopoulos by Haralampopoulos, 2014 CO 46, ¶
 48, 327 P.3d 255, 268 (concluding that the trial court could
 reasonably have determined that cross-examination and
 argument would have addressed any issues of prejudice);
see also United States v. Scully, 877 F.3d 464, 475
(2d Cir. 2017)

(concluding that the defendant's testimony regarding the
 advice of counsel was improperly excluded under Fed.R.Evid.
 403, based on the prosecution's assertion that it would
 have been prejudiced by the fact that counsel was not
 present, in part because the prosecution could have
 cross-examined the defendant).

 ¶48
 Finally, regarding the People's concern that admitting
 this testimony would have allowed Schnorenberg to use the
 attorney-client privilege as both a sword and a shield, we
 disagree. By testifying as to what his counsel had advised
 him, Schnorenberg would necessarily have waived his
 attorney-client privilege. People v. Trujillo, 144
 P.3d 539, 543 (Colo. 2006). Accordingly, the People would
 have been able to cross-examine Schnorenberg regarding what
 his counsel had told him, and Schnorenberg would not have
 been able to hide behind the privilege. ¶49 For these
 reasons, we conclude that even were the CRE 403 issue
 properly preserved, that rule does not require reversal here.

 D.
Harmlessness

 ¶50
 Having thus determined that the trial court erred in
 excluding Schnorenberg's proffered testimony regarding
 the advice of his counsel, the question becomes whether the
 error was harmless. The People contend that it was because
 the division applied the incorrect standard of review and the
 evidence of Schnorenberg's guilt was overwhelming. We are
 not persuaded.

 ¶51
 As an initial matter, we note that the parties disagree as to
 whether our review implicates the constitutional or
 nonconstitutional harmless error standards. Schnorenberg
 contends that the issue presented concerns his right to
 present a defense and, therefore, we must apply the
 constitutional harmless error standard. The People, in
 contrast, assert that the nonconstitutional harmless error
 standard should apply because, notwithstanding the trial
 court's exclusion of Schnorenberg's testimony as to
 the specific advice of his counsel, he was able to put on a
 defense and meaningfully test the People's evidence. We
 need not resolve this dispute because we conclude that the
 above-described errors require reversal even under the
 nonconstitutional harmless error standard advanced by the
 People.

 ¶52
 Preserved nonconstitutional errors require reversal if there
 is a reasonable probability that the error contributed to the
 defendant's conviction. People v. Monroe, 2020
 CO 67, ¶ 17, 468 P.3d 1273, 1276. When the alleged error
 is of a constitutional dimension, however, reversal is
 required unless the reviewing court can say that the error
 was harmless beyond a reasonable doubt. Hagos v.
 People, 2012 CO 63, ¶ 11, 288 P.3d 116, 119
("In other words, we reverse if 'there is a
 reasonable possibility that the [error] might have
 contributed to the conviction.'") (alteration in
 original) (quoting Chapman v. California, 386 U.S.
 18, 24 (1967)).

 ¶53
 Here, assuming without deciding that the nonconstitutional
 harmless error standard applies as the People contend, we
 conclude that there is a reasonable probability that the
 error contributed to Schnorenberg's convictions.

 ¶54
 As noted above, Schnorenberg's primary defense at trial
 was that he did not disclose certain information to investors
 because his securities attorney had advised him that he did
 not need to do so, and thus he lacked the requisite mens rea.
Due to the trial court's evidentiary rulings, however,
 Schnorenberg was unable to testify as to what his lawyer had
 actually advised him, which limited his ability to argue that
 he lacked the required mental state. Because this evidence
 was central to Schnorenberg's defense, we conclude that
 there is a reasonable probability that the exclusion of this
 testimony contributed to Schnorenberg's convictions and
 that, therefore, the trial court's error in excluding
 such evidence was not harmless.

 ¶55
We are not persuaded by the People's arguments to the
 contrary. The People quote extensively from
 Schnorenberg's testimony and contend that he was able to
 tell his side of the story. The testimony that the People
 cite, however, reveals that Schnorenberg was able to testify
 only in general terms about seeking advice from counsel. He
 was not permitted to testify regarding what his lawyer had
 actually told him.

 ¶56
 Likewise, although the People cite federal standards as to
 when a defendant is entitled to an instruction on an
 advice-of-counsel defense, these standards have no bearing on
 the question of whether the advice that Schnorenberg had
 received was relevant and potentially exculpatory.

 ¶57
 And notwithstanding the People's extensive recitation of
 the allegations of Schnorenberg's wrongdoing in order to
 show that the evidence of guilt was overwhelming, the fact
 remains that in excluding relevant, potentially exculpatory
 testimony that went to a central element of the offense (and
 the premise of Schnorenberg's defense), there is a
 reasonable probability that the trial court's error
 contributed to Schnorenberg's convictions.

 ¶58
 Accordingly, we conclude that the trial court's error in
 excluding the evidence of the advice of counsel was not
 harmless and that the division below therefore correctly
 reversed Schnorenberg's convictions.

 E.
Jury Instruction

 ¶59
 Finally, the People contend that the division below erred in
 concluding that the trial court had erroneously refused to
 give Schnorenberg's proposed jury instruction that good
 faith reliance on the advice of counsel is relevant to
 whether he had acted willfully. Schnorenberg, ¶
 36, 541 P.3d at 9. Although we need not address this issue in
 order to decide whether Schnorenberg is entitled to a new

 trial, because this issue is likely to recur on remand, we
 briefly address it to provide guidance for the trial court
 and the parties.

 ¶60
 Jury instructions must correctly inform the jury of the law.
Day, 255 P.3d at 1067. "A jury instruction
 should substantially track the language of the statute
 describing the crime ...." People v. Weinreich,
 119 P.3d 1073, 1076 (Colo. 2005). As long as the instruction
 correctly informs the jury of the law, the trial court has
 "broad discretion to determine the form and style of
 jury instructions." Day, 255 P.3d at 1067.

 ¶61
 Here, the trial court's jury instructions explained:

A person acts "knowingly" or "willfully"
 with respect to conduct or to a circumstance described by a
 statute defining an offense when he is aware that his conduct
 is of such nature or that such a circumstance exists. A
 person acts "knowingly" or "willfully",
 with respect to a result of his conduct, when he is aware
 that his conduct is practically certain to cause the result.

 This
 language tracked the statutory definition of
 "willfully" in section 18-1-501(6).

 ¶62
The trial court's instructions further enumerated the
 elements of securities fraud under section 11-51-501(1)(b):

1. That the defendant,

2. in the State of Colorado, at or about the date and place
 charged,

3. in connection with the offer or sale of any security,

4. directly or indirectly,

5. willfully

 6. (a) made an untrue statement of material fact, or

(b) omitted to state a material fact necessary in order to
 make the statements made, in the light of the circumstances
 under which they were made, not misleading.

 ¶63
 And the instructions set forth the elements of securities
 fraud under section 11-51-501(1)(c):

1. That the defendant,

2. in the State of Colorado, at or about the date and place
 charged,

3. in connection with the offer or sale of any security,

4. directly or indirectly,

5. willfully

6. engaged in any act, practice or course of business which
 operated or would operate as a fraud or deceit upon any
 person.

 ¶64
 The foregoing elemental instructions also properly tracked
 the language of the statute. And when, as here, the mens rea
 is offset from other elements of the offense in a jury
 instruction, the mens rea modifies all succeeding conduct
 elements. People v. Rodriguez, 914 P.2d 230, 272
(Colo. 1996).

 ¶65
 Accordingly, we conclude that the foregoing instructions
 properly advised the jury of the applicable law.

 ¶66
 The question remains whether Schnorenberg is entitled to an
 additional instruction that, in determining whether he had
 acted willfully, the jury may

 consider the evidence as it relates to his good faith
 reliance on the advice of counsel.

 ¶67
 In Blair, 579 P.2d at 1139, we rejected a jury
 instruction that advised the jurors that good faith was an
 absolute defense to a securities fraud violation.

 ¶68
 In Riley, 708 P.2d at 1364-65, in contrast, we
 concluded that a jury instruction providing that good faith
 was not a defense was also impermissible. This was
 because such an instruction created a substantial risk that a
 jury would convict a defendant who had made false or
 misleading statements in the good faith belief that they were
 true or who in good faith believed that the defendant's
 practice or course of business was not fraudulent or
 deceitful. Id. at 1365.

 ¶69
 Taken together, these cases bar a trial court from
 instructing the jury that good faith is either an absolute
 defense or not a defense at all. Thus, Colorado case law
 neither requires nor prohibits Schnorenberg's particular
 requested instruction, and the decision as to whether to
 provide such an instruction rests within the trial
 court's sound discretion.

 III.
Conclusion

 ¶70
 For these reasons, we conclude that the trial court
 reversibly erred in excluding Schnorenberg's testimony
 about the advice of his securities counsel. Accordingly, we
 affirm the judgment of the division below and remand this
 case for a new trial on the counts at issue.