The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 31, 2025

**2025COA69**

**No. 21CA1104, *People v. Casper* — Crimes — Stalking — Credible Threat; Criminal Law — Mens Rea — Knowingly; Constitutional Law — First Amendment — Freedom of Speech — True Threats**

In this appeal, a criminal defendant challenges his judgment of conviction for stalking – credible threat in violation of section 18-3-602(1)(a), C.R.S. 2024, and harassment in violation of section 18-9-111(1)(e), C.R.S. 2024. The defendant's convictions stem from emails he sent in 2020. Before trial, the defendant brought an as-applied constitutional challenge to the stalking charge, contending that the speech in his emails didn't rise to the level of a true threat and was, therefore, protected by the First Amendment. Applying the factors set forth in *People in Interest of R.D.*, 2020 CO 44, *abrogated by Counterman v. Colorado*, 600 U.S. 66 (2023), the trial

court denied the defendant's challenge and found that the speech in his emails constituted "true threats."

After the defendant's trial, the United States Supreme Court issued its opinion in *Counterman*, which addressed a different subsection of Colorado's stalking statute, section 18-3-602(1)(c); reversed *People v. Counterman*, 2021 COA 97; and abrogated *R.D.* The Supreme Court concluded that the First Amendment requires a defendant charged with stalking based on "true threats" to have a "subjective understanding" that his statements are threatening in nature and that a mens rea of recklessness is sufficient to demonstrate such an understanding. *Counterman*, 600 U.S. at 69-70, 78-82.

A division of the court of appeals now addresses whether the defendant's conviction satisfied the mens rea requirement set forth in *Counterman*. The division concludes that it did because section 18-3-602(1)(a) requires the mens rea of knowingly.

The division also rejects the defendant's remaining contentions and affirms the judgment of conviction.

COLORADO COURT OF APPEALS      **2025COA69**

---

Court of Appeals No. 21CA1104
Pitkin County District Court No. 20CR23
Honorable Christopher G. Seldin, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jeremiah D. Casper,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE HAWTHORNE*
Lipinsky and Gomez, JJ., concur

Announced July 31, 2025

---

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Joseph Chase, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Jeremiah D. Casper, appeals his judgment of conviction for stalking – credible threat in violation of section 18-3-602(1)(a), C.R.S. 2024, and harassment in violation of section 18-9-111(1)(e), C.R.S. 2024.  His convictions stem from emails he sent in 2020.  Before trial, Casper brought an as-applied constitutional challenge to the stalking charge, contending that the speech in his emails didn't rise to the level of a true threat and was, therefore, protected by the First Amendment.  Applying the factors set forth in *People in Interest of R.D.*, 2020 CO 44, *abrogated by Counterman v. Colorado*, 600 U.S. 66 (2023), the trial court denied Casper's challenge and found that the speech in his emails constituted "true threats."

¶ 2     After Casper's trial, the United States Supreme Court issued its opinion in *Counterman*, which addressed a different subsection of Colorado's stalking statute, section 18-3-602(1)(c); reversed *People v. Counterman*, 2021 COA 97; and abrogated *R.D.*  The Supreme Court concluded that the First Amendment requires a defendant charged with stalking based on "true threats" to have a "subjective understanding" that his statements are threatening in nature and that a mens rea of recklessness is sufficient to

demonstrate such an understanding. *Counterman*, 600 U.S. at 69-70, 78-82.

¶ 3    We now address whether Casper's conviction satisfied the mens rea requirement set forth in *Counterman.* We conclude that it did because section 18-3-602(1)(a) requires the mens rea of knowingly.

¶ 4    We also reject Casper's remaining contentions that insufficient evidence was presented at trial and that his convictions should merge. Accordingly, we affirm the judgment of conviction.

## I.    Background

¶ 5    Casper's convictions originate from a series of emails he sent to B.O., a police officer, in April 2020. We first set forth the events that led to those emails and then describe Casper's conduct underlying his convictions.

### A.    Casper's Initial Arrest

¶ 6    In June 2017, B.O. and B.V., another police officer, apprehended Casper on suspicion of burglary, theft, and trespassing. While restrained in the police car, Casper repeatedly unfastened his seatbelt, prompting B.O. to apply a pain compliance technique twice. Upset about the use of the pain compliance

technique, Casper contacted his then public defender, M.O., about the use of the technique and filed an official report with the sheriff's office. But according to Casper, he never heard back from M.O. or received any indication that the police were addressing his concerns. This prompted Casper to send a series of emails to, among others, M.O., B.O., and B.V. in April 2018.

¶ 7 The People charged Casper with harassment in connection with the April 2018 emails. In a victim impact statement, B.O. reported, "My gut tells me Casper's not a physical threat to me or my family, however, I still took substantial steps to prepare my family and to defend a physical threat or attack in case I'm wrong. I do feel . . . harassed and want the unsolicited communication to stop permanently." However, B.O. never asked Casper to stop contacting him, blocked Casper's email, or sought a protection order against him. The harassment charges related to the April 2018 emails were eventually dismissed.

## B. April 2020 Emails

¶ 8 In December 2019, a jury found Casper guilty of burglary and theft, and the district court sentenced him to thirty months in the Department of Corrections' custody. B.O. testified at that trial. In

3

April 2020, Casper was released from custody.  Shortly after his release, he sent a series of emails to B.O.'s work email.  Those emails included the following statements:

- "See the thing is, the bullets are expensive," with the subject line "Target practice."

- "The thing about lead is a little bit goes a long ways."

- "You would be amazed about my rifle practice.  Im [sic] a sharp shooter."

- "The rifle-man."

- "When I take aim, I know all about the wind.  I like a red laser."

- "I see blue skys [sic] in my cross hairs."

- "Should I take the shot," with the subject line "Trigger finger."

- "So 6 feet of rope or the sniper."

- "Be creative," with the subject line "6 Feet of rope."

- "Im [sic] looking down from Red Mountain."

- "As you can tell, its a blizzard on Red Mountain."

- "So everybody wants to know [B.O.] did it.  Here is how I do it.  I'm gonna take about 6 teeth and a broken jam

[sic]. Then we'll get fired up!" with the subject line "Boxing."

- "You know I get in the mood from time to time, fry me up some pork," with the subject line "Firing Cops."

- "How many teeth am I gonna remove from [B.O.]'s head?"

¶ 9     Casper included B.V. and C.M., his public defender from his burglary and theft trial, on some of the April 2020 emails. He also sent an email directly to C.M. stating, "You know Im gonaa [sic] put a 9mm in [B.O.]'s throat." C.M. forwarded this email to B.O.

## C.     Procedural History

¶ 10     B.O. contacted the Snowmass Village Police Department in response to Casper's April 2020 emails, and the Pitkin County Sheriff's Office investigated them. Casper was arrested and charged with four counts: (1) retaliation against a witness, § 18-8-706, C.R.S. 2024; (2) stalking – credible threat, § 18-3-602(1)(a); (3) stalking – serious emotional distress, § 18-3-602(1)(c); and (4) harassment, § 18-9-111(1)(e).

¶ 11     Before trial, the People dismissed the stalking – serious emotional distress charge. Casper then filed a motion to dismiss the remaining stalking charge, asserting that the statute was

5

unconstitutional as applied to him and that his emails to B.O. were protected speech because they did not contain "true threat[s]." After an evidentiary hearing, the district court, applying the test outlined in *R.D.*, concluded that Casper's emails to B.O. were "true threats" and denied his motion to dismiss. The parties then proceeded to a jury trial on that stalking charge, along with the remaining counts.

¶ 12 The jury acquitted Casper of retaliating against a witness but convicted him of stalking – credible threat and harassment. The court sentenced Casper to four years in the Department of Corrections' custody on the stalking conviction and six months of concurrent jail time on the harassment conviction.

## II. Analysis

¶ 13 On appeal, Casper contends that (1) his stalking and harassment convictions violate his First Amendment free speech rights and should be vacated because his April 2020 emails to B.O., taken in context, were not "true threats"; (2) there was insufficient evidence to support his stalking and harassment convictions; and (3) his harassment conviction should merge into his stalking

conviction because both convictions stem from the April 2020 emails. We address and reject each contention below.

## A. Constitutional Challenge

¶ 14　　We first address Casper's contention that his stalking and harassment convictions violate his First Amendment rights. We affirm Casper's stalking conviction because the district court properly instructed the jury consistent with the holding in *Counterman.* And we affirm Casper's harassment conviction because he waived his claim that the conviction is unconstitutional.

### 1. Legal Principles and Standard of Review

¶ 15　　Whether a statement is a "true threat," and thus falls outside the First Amendment's protection, is a factual issue to be determined by the fact finder. *People v. Chase*, 2013 COA 27, ¶¶ 68, 70. But an appellate court reviews First Amendment free speech issues de novo and "must make an independent review of the whole record to ensure that the judgment rendered does not intrude on the right of free speech." *Holliday v. Reg'l Transp. Dist.*, 43 P.3d 676, 681 (Colo. App. 2001).

¶ 16    At the time of Casper's trial, Colorado courts applied the contextual factors test announced in *R.D.* to determine whether a statement constituted a "true threat" by considering

> (1) the statement's role in a broader exchange, if any, including surrounding events; (2) the medium or platform through which the statement was communicated, including any distinctive conventions or architectural features; (3) the manner in which the statement was conveyed (e.g., anonymously or not, privately or publicly); (4) the relationship between the speaker and recipient(s); and (5) the subjective reaction of the statement's intended or foreseeable recipient(s).

*R.D.*, ¶ 4.

¶ 17    But in *Counterman,* the United States Supreme Court held that, in "true-threats" cases, "the State must prove . . . that the defendant had some understanding of his statements' threatening character." *Counterman*, 600 U.S. at 73. The Supreme Court also held that a mens rea standard of recklessness "is enough" for this purpose. *Id.* According to the Supreme Court, the recklessness standard "offers 'enough "breathing space" for protected speech,' without sacrificing too many of the benefits of enforcing laws against true threats." *Id.* at 82 (quoting *Elonis v. United States*, 575 U.S. 723, 748 (2015) (Alito, J., concurring in part and dissenting in

8

part)). The Supreme Court also noted that it "do[es] not require that the State prove the defendant had any more specific intent to threaten the victim." *Id.* at 73.

¶ 18    We review preserved constitutional challenges for constitutional harmless error. *Hagos v. People*, 2012 CO 63, ¶ 11. Under this standard, we need not reverse if we conclude that any error was "harmless beyond a reasonable doubt." *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). But "if 'there is a reasonable *possibility* that the [error] might have contributed to the conviction,'" we must reverse. *Id.* (citation omitted).

### 2.    Additional Facts

¶ 19    After the evidentiary hearing regarding Casper's motion to dismiss his remaining stalking charge, the district court applied *R.D.* in determining that Casper's 2020 emails to B.O. were "true threats." Specifically, the court found that the emails were "true threats" for the following reasons:

- "[T]he words here convey[ed] a credible threat."

- "[S]ufficient circumstance[s]" existed "to provide Mr. Casper with a motive to be angry at [B.O.] and to provide a reasonable basis to conclude that the e-mails sent to

9

[B.O.] were sent as threats in retaliation for those acts taken by [B.O.] against Mr. Casper in connection with the prior case."

- The statements were not "included in the course of any sort of political demonstration, or other manifestation of classic opinion driven speech."

- The statements were communicated privately to B.O. and C.M., which "heighten[ed] the conclusion that [the emails] were sent not for political purposes, but rather more reasonably understood to communicate threats and hostility to the recipient."

- Casper did not convey these statements "anonymously" or "publicly." Rather, Casper conveyed the statements "privately" and "repeatedly."

- The timing of the emails was "significant" because they "were sent shortly after Mr. Casper was released from the Department of Corrections on parole."

- B.O.'s subjective reaction to Casper's emails "was concern. Fear. And that [wa]s reasonable."

¶ 20    The court denied Casper's motion to dismiss the remaining stalking count, and the case proceeded to trial.

### 3.    Casper's Stalking Conviction

¶ 21    We first address Casper's contention that his stalking conviction should be vacated because it violates his First Amendment rights.  We conclude that the district court erred by making constitutionally inadequate findings when it denied Casper's motion to dismiss.  But we decline to vacate Casper's stalking conviction because the error was harmless beyond a reasonable doubt.

### a.    The District Court Erred by Making Constitutionally Inadequate Findings

¶ 22    The court's findings were inadequate to protect against "the prospect of chilling fully protected expression," *Counterman,* 600 U.S. at 75, because the *R.D.* test that the court followed did not address the mens rea standard required under *Counterman.  See R.D.,* ¶ 4.  And without a determination of Casper's subjective understanding of the threatening character of his emails, the court's "true threat" findings were insufficient to strip the emails of First Amendment protections.  *See Counterman,* 600 U.S. at 73, 82.

¶ 23    But the district court's error is harmless beyond a reasonable doubt if the jury instructions required the jury to make constitutionally adequate findings.  *See People v. Abdulla*, 2020 COA 109M, ¶ 58 ("[W]e employ the presumption that the jury understands and applies the given instructions unless a contrary showing is made . . . ."). We address that question next.

b.    Whether the Jury Made Constitutionally Adequate Findings

¶ 24    To begin, we note that the statutory subsection at issue in *Counterman* differs from the subsection under which Casper was convicted.  *Compare* § 18-3-602(1)(c), *with* § 18-3-602(1)(a).  Unlike Casper, Counterman was convicted of stalking – serious emotional distress, which required the prosecution to prove that he "knowingly"

> [r]epeatedly follow[ed], approache[d], contact[ed], place[d] under surveillance, or ma[de] any form of communication with another person, a member of that person's immediate family, or someone with whom that person has or has had a continuing relationship *in a manner that would cause a reasonable person to suffer serious emotional distress* and d[id] cause that person, a member of that person's immediate family, or someone with whom that person has or has had a continuing relationship to suffer serious emotional distress.

§ 18-3-602(1)(c) (emphasis added). In *Counterman*, the Supreme Court identified the infirmity as "[t]he State['s] ha[ving] to show only that a reasonable person would understand [Counterman's] statements as threats." *Counterman*, 600 U.S. at 82. The Supreme Court concluded that Counterman's conviction under section 18-3-602(1)(c) failed to pass muster under the First Amendment because the State "did not have to show any awareness on [Counterman's] part that the statements could be understood" as threats. *Counterman*, 600 U.S. at 82.

¶ 25    But Casper was not convicted of stalking – serious emotional distress. Rather, he was convicted of stalking – credible threat under section 18-3-602(1)(a), which contains different statutory language than does section 18-3-602(1)(c). Section 18-3-602(1)(a) requires the State to prove that Casper "*knowingly . . . [made] a credible threat* to another person and, in connection with the threat, repeatedly follow[ed], approache[d], contact[ed], or place[d] under surveillance that person, a member of that person's immediate family, or someone with whom that person has or has had a continuing relationship." (Emphasis added.)

13

¶ 26    In *Counterman,* the Supreme Court defined when a person acts knowingly as "when 'he is aware that [a] result is practically certain to follow.'"  600 U.S. at 79 (alteration in original) (quoting *United States v. Bailey,* 444 U.S. 394, 404 (1980)).  And particularly as it related to Counterman's case, the Supreme Court interpreted that to mean "when he knows to a practical certainty that others will take his words as threats."  *Id.*

¶ 27    Section 18-3-602(2)(b) defines a "[c]redible threat" as

> a threat, physical action, or repeated conduct that would cause a reasonable person to be in fear for the person's safety or the safety of his or her immediate family or of someone with whom the person has or has had a continuing relationship.  The threat need not be directly expressed if the totality of the conduct would cause a reasonable person such fear.

¶ 28    Construing this statutory provision with the definition of "knowingly" provided in *Counterman,* the result, as applicable to Casper's conduct, is that Casper committed stalking under section 18-3-602(1)(a) if he made a threat or repeated conduct toward B.O., and in connection with that threat/conduct, repeatedly contacted B.O., *knowing to a practical certainty* that his threat or repeated conduct would cause a reasonable person to be in fear for that

14

person's safety or the safety of his or her immediate family. *See* § 18-1-503(4), C.R.S. 2024 ("When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears.").

¶ 29     This is sufficient to meet the subjective mental state required under *Counterman* because knowingly is a more culpable mental state than recklessly. *See Counterman*, 600 U.S. at 78-79 ("Purpose is the most culpable level in the standard mental-state hierarchy," and "[n]ext down, though not often distinguished from purpose, is knowledge."). Indeed, *Counterman* approved the lesser mental-state standard of recklessness, noting that, "[i]n the threats context, it means that a speaker is aware 'that others *could* regard his statements as' threatening violence and 'delivers them anyway.'" *Id.* at 79 (emphasis added) (quoting *Elonis*, 575 U.S. at 746 (Alito, J., concurring in part and dissenting in part)).

¶ 30     At trial, Jury Instruction No. 11 instructed the jury, consistent with section 18-3-602(1)(a), as follows:

> The elements of the crime of stalking are:
>
> 1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. *knowingly*,

4. made a credible threat to another person, either directly, or indirectly through a third person, and

5. in connection with the threat, repeatedly made any form of communication with that person, regardless of whether a conversation ensued.

(Emphasis added.)

¶ 31    The court also instructed the jury on the definition of "knowingly" in Instruction No. 14 as follows:

A person acts "knowingly" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such a circumstance exists. *A person acts "knowingly" with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result.*

(Emphasis added.)

¶ 32    The trial court then instructed the jury on the definition of "credible threat" in Instruction No. 15 as follows:

"Credible threat" *means a threat, physical action, or repeated conduct that would cause a reasonable person to be in fear for the person's safety* or the safety of his immediate family or of someone with whom the person has or has

had a continuing relationship. The threat
need not be directly expressed if the totality of
the conduct would cause a reasonable person
such fear.

(Emphasis added.)

¶ 33    Because Instruction No. 11 included "knowingly" as a stand-
alone element before the fourth and fifth elements, the instructions
required the jury to make factual findings regarding Casper's
subjective mental state about whether he was making a credible
threat against B.O. when he sent the emails. *See Chase*, ¶¶ 61-63
(concluding that there was no error in the jury instruction regarding
the mens rea element of felony stalking because "[t]he [jury]
instruction listed the knowingly mens rea as a standalone element,
thereby indicating that it applied to all of the subsequent elements
of the offense"); *see also* § 18-1-503(4).  More specifically, the
inclusion of "knowingly" as a stand-alone element before the
subsequent elements required the jury to make factual findings as
to whether, when sending the emails, Casper was aware that he
was making "a threat" and aware to a practical certainty that the
emails "would cause a reasonable person to be in fear for the
person's safety."  And in finding Casper guilty under section 18-3-

17

602(1)(a), the jury found that his subjective state of mind in sending the emails to B.O. satisfied a more culpable and difficult to prove mens rea standard — knowingly — than the minimum recklessness standard required after *Counterman*. *See Counterman*, 600 U.S. at 73, 79.

¶ 34 Because the instructions required the jury to consider whether Casper knowingly made a credible threat to B.O., its verdict survives constitutional scrutiny, and we decline to reverse Casper's stalking – credible threat conviction on this ground. Further, given our conclusion that a jury finding made in accordance with the statutory language of section 18-3-602(1)(a) does not violate *Counterman*, we disagree with Casper's contention that the statutory definition of "credible threat" under section 18-3-602(2)(b) is facially unconstitutional. As explained above, the statute Casper was charged with and found guilty of violating, section 18-3-602(1)(a), required the People to prove that Casper *knowingly* made a credible threat to B.O. *See* § 18-1-503(4). Thus, even though the subjective mental state was not set forth in the definition of "credible threat" in section 18-3-602(2)(b), taken in context, Casper was not convicted based on an objective standard. We, therefore,

decline to say that section 18-3-602(2)(b) is facially unconstitutional.

¶ 35    Because section 18-3-602(1)(a) and the jury instructions required the People to prove that Casper knowingly made a threat that would cause a reasonable person to be in fear of their safety, we decline to reverse his stalking conviction.

### 4.    Casper's Harassment Conviction

¶ 36    We next address Casper's contention that his harassment conviction violates his First Amendment rights. Because Casper conceded at trial that he committed harassment, he waived this contention, and we decline to address it on the merits.

¶ 37    At multiple points during Casper's trial, his attorney conceded that he was guilty of harassment. For example, during the defense's opening statement, Casper's attorney said,

> [The People] also have to prove to you . . . that these e-mails constitute the crime of harassment. Now, we're not disputing that this was harassment. It was. These e-mails were aggressive. They talk about guns. They talk about target practice. And there was an excessive amount of them.

¶ 38    Then, during the defense's closing statement, Casper's attorney said, "Now, I think this first one is relatively easy.

Harassment. And Mr. Casper is guilty. You can fill it out when you get back there. He sent these e-mails with the intent to harass, annoy, or alarm another person." Casper's attorney also told the jury, "We agree, it's harassment."

¶ 39 Because Casper (through his attorney) conceded that he was guilty of harassment, he waived his First Amendment constitutionality challenge to the harassment conviction. "Waiver is 'the *intentional* relinquishment of a *known* right or privilege.'" *Forgette v. People*, 2023 CO 4, ¶ 28 (quoting *People v. Rediger*, 2018 CO 32, ¶ 39). "A waiver may be explicit, as, for example, when a party expressly abandons an existing right or privilege, or it may be implied, as when a party engages in conduct that manifests an intent to relinquish a right or privilege or acts inconsistently with its assertion." *Id.* Casper's trial counsel made a First Amendment "true threats" objection to the stalking charge and was therefore presumably fully aware that a similar challenge could be made to the harassment charge. Still, Casper's counsel not only declined to contest the constitutionality of the harassment charge but also admitted Casper's guilt for that charge.

¶ 40    Based on these facts, we conclude that Casper impliedly waived any constitutional challenge to his harassment charge. *See id.* at ¶ 34 (The defendant "intentionally relinquished his known right to object to [a] sleeping juror and therefore waived any such objection for appellate review" because his "counsel was fully aware of the sleeping juror but did not object or ask the court to take any action to address the issue.").

¶ 41    Because Casper waived his constitutional claim as to the harassment charge, we need not address it.[1]  *See Phillips v. People*, 2019 CO 72, ¶ 18 ("[A] waiver extinguishes error, and therefore appellate review . . . ." (quoting *Rediger*, ¶ 40)).

## B.    Sufficiency of the Evidence

¶ 42    Casper next argues that there was insufficient evidence to support either (1) the stalking conviction, because he was not aware that his emails were a credible threat; or (2) the harassment

---

[1] In *People v. Moreno*, 2022 CO 15, ¶¶ 1, 27, 33, the Colorado Supreme Court held that the language "intended to harass" in section 18-9-111(1)(e), C.R.S. 2024, was unconstitutionally overbroad.  The supreme court concluded, however, that the remaining prohibitions in section 18-9-111(1)(e) were not invalidated by the unconstitutional nature of the "intended to harass" language.  *Moreno*, ¶ 27.  Casper was charged with and convicted of harassment under section 18-9-111(1)(e), and the harassment jury instructions included the "intended to harass" language.  While we acknowledge the unconstitutional nature of this language, we decline to consider whether the trial court erred by using this language when instructing the jury because Casper did not raise this issue on appeal.  *See Galvan v. People*, 2020 CO 82, ¶ 45 ("Under our adversarial system of justice, we adhere to the party presentation principle, which relies on the parties to frame the issues to be decided and assigns to courts the role of neutral arbiters of the matters raised."); *Moody v. People*, 159 P.3d 611, 614 (Colo. 2007) ("[A]rguments not advanced on appeal are generally deemed waived.").  Indeed, at oral argument, defense counsel said that he didn't believe the erroneous instruction would have affected the trial because, at trial, defense counsel conceded Casper's guilt on the harassment charge.

conviction, because it was not his "conscious objective" to threaten B.O.  We disagree.

### 1. Standard of Review and Applicable Legal Principles

¶ 43 We review a sufficiency of the evidence claim de novo. *McCoy v. People*, 2019 CO 44, ¶ 34.  In assessing whether a conviction is supported by sufficient evidence, "we ask 'whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.'" *People v. Donald*, 2020 CO 24, ¶ 18 (quoting *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)).

### 2. Application

¶ 44 We first address the sufficiency of the evidence as it relates to Casper's stalking conviction.  Then we address the sufficiency of the evidence as it relates to Casper's harassment conviction.

#### a. Stalking Conviction

¶ 45 Casper appears to challenge only whether there was sufficient evidence to support the conclusion that he knowingly made a credible threat to B.O.  We therefore focus our analysis on this

point and conclude that the relevant evidence presented at trial was sufficient to support Casper's stalking conviction, and that he knowingly made credible threats to B.O.

¶ 46 While there was limited direct evidence that Casper knowingly made credible threats against B.O., the People introduced sufficient circumstantial evidence that Casper knew he was making credible threats when he sent the emails. First, during his testimony, Casper acknowledged that he had sent the emails and was aware of the content of many of them. And many of the emails contained references to bodily harm and potentially lethal weapons that could be construed as threatening.[2] While Casper disputed the meaning of the emails during his testimony, the jury could reasonably determine that the emails constituted a credible threat and, because Casper knew he sent them, he knowingly made a credible threat to B.O. Second, Casper sent the emails shortly after he was released by the Department of Corrections and testified that, on the day he sent the emails, he was angry about what happened in the police car in 2018. Again, this evidence could support a conclusion

---

[2] The contents of some of these emails are quoted in Part I.B above.

24

by a reasonable mind that Casper knowingly made a credible threat to B.O. Third, Casper had sent emails to B.O. in the past, but in the 2020 emails, the threat level of Casper's messages to B.O. escalated. This additional circumstantial evidence could also support the conclusion that Casper knowingly made credible threats to B.O. *See People v. Buckner*, 2022 COA 14, ¶ 83 ("[I]n determining the sufficiency of evidence, the law makes no distinction between direct and circumstantial evidence."); *see also People v. Yascavage*, 80 P.3d 899, 902 (Colo. App. 2003) ("A defendant's mental state may be inferred from his or her conduct and other evidence."), *aff'd*, 101 P.3d 1090 (Colo. 2004).

¶ 47    Casper contends that the evidence was insufficient to show that he knowingly made a credible threat to B.O. because he sent the emails with the intent to get help filing a lawsuit; he did not own a gun; and in his emails, he said that he was miles away and asking about a job or housing. These facts could lead a reasonable mind to conclude that Casper did not knowingly make credible threats to B.O. through the emails. But it's inconsequential that evidence could have led the jury to a different result. *See People v. Oliver*, 2020 COA 150, ¶ 6 ("A conviction will not be set aside merely

'because a different conclusion might be drawn from the evidence.'" (quoting *People v. Tumbarello*, 623 P.2d 46, 49 (Colo. 1981))). We need only determine if sufficient evidence was admitted at trial to support Casper's conviction. In this case, viewing the evidence in the light most favorable to the People, *see Donald*, ¶ 18, we conclude that there was sufficient evidence to support Casper's stalking conviction. Accordingly, we decline to vacate Casper's stalking conviction on sufficiency of the evidence grounds.

### b. Harassment Conviction

¶ 48 We next address Casper's contention that the prosecution introduced insufficient evidence at trial to support his harassment conviction. The People argue that Casper either waived this challenge or invited the error because, at trial, his counsel conceded his guilt on the harassment charge. We decline to address the People's waiver and invited error arguments, however, because we conclude there was sufficient evidence to support Casper's harassment conviction. *Cf. In re Marriage of Mack*, 2022 CO 17, ¶ 12 (assuming a party preserved an issue for appeal and proceeding to the merits because the party's argument was "unavailing").

26

¶ 49    Casper's argument narrowly focuses on whether there was sufficient evidence of his mental state.  Thus, we limit our analysis to this point.  Casper contends that there was insufficient evidence to support a finding that he sent the April 2020 emails with the "conscious objective" to threaten B.O.  But the jury did not need to make such a specifically worded finding to convict Casper of harassment.  Rather, the jury needed to find, and did find, that, "with intent to harass, annoy, or alarm" B.O., Casper sent the April 2020 emails "in a manner intended to . . . threaten bodily injury." § 18-9-111(1)(e).

¶ 50    Viewing the evidence as a whole and in the light most favorable to the prosecution, there was substantial and sufficient evidence to support a conclusion by a reasonable mind that Casper sent the April 2020 emails with the requisite intent.

¶ 51    First, the evidence supports the conclusion that Casper sent the emails to B.O. with the intent to harass, annoy, or alarm B.O. In April 2020, Casper sent B.O. at least twenty-six emails, many of which referenced violence, bodily injury, and lethal weapons. Further, Casper knew that his emails to B.O. were unwelcome. B.O. never responded to Casper's emails, and Casper had

previously been charged with harassment after sending B.O. emails in 2018. In his victim impact statement regarding the harassment charge for the 2018 emails, B.O. said, "I do feel . . . harassed and want the unsolicited communication to stop permanently." Additionally, the April 2020 emails that Casper sent directly to B.O. contained numerous statements that a reasonable mind could construe as threatening bodily injury because the statements referenced guns, lengths of rope, and physical violence.

¶ 52 Second, there was sufficient evidence to support a finding that Casper *intended* to threaten B.O. Although Casper emailed B.O. in 2018, the 2020 emails marked an escalation in Casper's threats to B.O. This, in combination with evidence showing that Casper sent the emails to B.O. shortly following Casper's release by the Department of Corrections, at a time when he was angry with B.O., could support a conclusion by a reasonable mind that Casper intended to threaten B.O. Again, that a reasonable mind might have drawn a different conclusion from the evidence presented is inconsequential. *See Oliver,* ¶ 6.

¶ 53 This evidence, "when viewed as a whole and in the light most favorable to the prosecution, [wa]s substantial and sufficient to

28

support a conclusion by a reasonable mind," *Donald*, ¶ 18 (quoting *Clark*, 232 P.3d at 1291), that Casper was guilty of harassment beyond a reasonable doubt. Accordingly, we decline to vacate his harassment conviction on sufficiency of the evidence grounds.

### C. Merger

¶ 54 Finally, Casper contends that his harassment conviction should merge into his stalking conviction because both convictions stem from the April 2020 emails. We disagree.

#### 1. Legal Principles and Standard of Review

¶ 55 Under the Double Jeopardy Clauses in the United States and Colorado Constitutions, "an accused shall not be twice placed in jeopardy for the same offense." *Reyna-Abarca v. People*, 2017 CO 15, ¶ 49 (citing U.S. Const. amends. V, XIV; Colo. Const. art. II, § 18). This protects an accused from "suffering multiple punishments for the same offense." *Id.* The General Assembly may, however, "authoriz[e] multiple punishments based on the same criminal conduct." *Friend v. People*, 2018 CO 90, ¶ 14.

¶ 56 Under these principles, if a defendant's conduct "establishes the commission of more than one offense, the defendant may be prosecuted for each such offense." § 18-1-408(1), C.R.S. 2024. But

the defendant cannot be convicted of more than one offense if "[o]ne offense is included in the other, as defined in subsection (5) of this section." § 18-1-408(1)(a).

¶ 57     Pursuant to section 18-1-408(5)(a),

> A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when . . . [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged.

¶ 58     The Colorado Supreme Court has "adopted the 'subset' test to evaluate whether an offense is a lesser included offense of another offense under section 18-1-408(5)(a)." *Thomas v. People*, 2021 CO 84, ¶ 24 (quoting *Reyna-Abarca*, ¶ 64). In adopting this test, it held that "an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." *Reyna-Abarca*, ¶ 64; *see also Thomas*, ¶ 24. But "[t]o the extent that a lesser offense is statutorily defined in disjunctive terms, effectively providing alternative ways of being committed, any set of elements sufficient for commission of that lesser offense that is

30

necessarily established by establishing the statutory elements of a greater offense constitutes an included offense." *People v. Snider*, 2021 COA 19, ¶ 59 (alteration in original) (quoting *People v. Rock*, 2017 CO 84, ¶ 16).

¶ 59    We review de novo whether two convictions must merge. *Thomas*, ¶ 19. If "a defendant establishes that a trial court entered multiplicitous punishments in violation of double jeopardy principles, merger is the remedy." *Whiteaker v. People*, 2024 CO 25, ¶ 24.

### 2.    The Convictions Do Not Merge

¶ 60    Casper contends that the stalking and harassment convictions must merge because harassment via electronic threat is a "logical subset" of stalking – credible threat. Casper's appeal only concerns section 18-1-408(5)(a), so this is where we focus our analysis.

¶ 61    An analysis of Casper's stalking and harassment convictions reveals that merger is not required.

¶ 62    A person commits stalking under section 18-3-602(1)(a) if

> directly, or indirectly through another person, the person knowingly . . . [m]akes a credible threat to another person and, in connection with the threat, repeatedly follows, approaches, contacts, or places under

31

surveillance that person, a member of that person's immediate family, or someone with whom that person has or has had a continuing relationship.

¶ 63    A person commits harassment under section 18-9-111(1)(e) if,

with intent to harass, annoy, or alarm another person, he or she . . . [d]irectly or indirectly initiates communication with a person or directs language toward another person, anonymously or otherwise, by telephone, telephone network, data network, text message, instant message, computer, computer network, computer system, or other interactive electronic medium in a manner intended to . . . threaten bodily injury.

¶ 64    A close review of the elements set forth in these statutes shows that harassment under section 18-9-111(1)(e) is not a lesser included offense of stalking under section 18-3-602(1)(a) because this subsection of harassment contains elements that are not included in the elements of stalking – credible threat.

¶ 65    First, under section 18-9-111(1)(e), harassment requires that the defendant initiate communication "*with intent to harass, annoy, or alarm another person.*" (Emphasis added.)  There is no such requirement for stalking – credible threat.  *See* § 18-3-602(1)(a).

¶ 66    Second, the requisite mens rea the defendant must possess in making a threat is different in the two statutes.  Stalking requires

that the defendant "*knowingly* . . . [m]ake[] a credible threat to

another person." § 18-3-602(1)(a) (emphasis added). Conversely,

harassment requires that the defendant "*intended* to . . . threaten

bodily injury." § 18-9-111(1)(e) (emphasis added). At a basic level,

this would seem to preclude the merger of Casper's convictions.

But a disparity in mental state between two offenses does not

always mean that the convictions cannot merge. For example, in

*Snider*, ¶¶ 60-63, a division of this court determined that an offense

with a mens rea of "knowingly" was a lesser included offense of an

offense with a mens rea of "with intent." But in *Snider*, the division

concluded that an offense with a *less* culpable mental state could

merge into an offense with a *more* culpable mental state. *Id.* at

¶¶ 55, 60-63. This is different from the issue we address here.

"[W]ith intent" is a more culpable mental state than "[k]nowingly."

*People v. Suazo*, 867 P.2d 161, 165 (Colo. App. 1993); *People v.*

*Wade*, 2024 COA 13, ¶ 23. And as the division noted in *Snider*, "if

one has acted 'with intent,' one has necessarily acted 'knowingly.'"

*Snider*, ¶ 63. But the opposite is not necessarily true. We cannot

say that, because a person acted knowingly, the person necessarily

also acted with intent. Thus, an offense requiring a more culpable

mental state (harassment) cannot automatically be a lesser included offense of an offense requiring a less culpable mental state (stalking).

¶ 67    Because the subsection of the harassment statute under which Casper was convicted does not contain only those elements included in the subsection of the stalking statute under which he was convicted, his harassment conviction is not a lesser included offense and the convictions do not merge.

## III.    Disposition

¶ 68    The district court's judgment of conviction is affirmed.

JUDGE LIPINSKY and JUDGE GOMEZ concur.