24CA1341 Peo v Kukat 12-18-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1341
Gilpin County District Court No. 23CR38
Honorable Jeffrey R. Pilkington, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

James Pkemoi Kukat,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Brown and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 18, 2025

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney
General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Lauren Rae Bushong, Deputy
State Public Defender, Golden, Colorado, for Defendant-Appellant

¶ 1　　Defendant, James Pkemoi Kukat, appeals his menacing and harassment convictions arising from emails he sent to Monarch Casino (Monarch) in April 2023.  Kukat contends that the trial court undermined his Fifth Amendment right to remain silent and right against self-incrimination by allowing a police officer to testify about Kukat's pre-arrest silence.  Kukat also argues that the trial court erred by denying his request to instruct the jury on "true threats" under *Counterman v. Colorado*, 600 U.S. 66 (2023), and by failing to supply a corresponding limiting instruction for the menacing and harassment charges.  For the reasons below, we affirm.

## I.　　Background

¶ 2　　Monarch owns and operates a casino in Black Hawk, Colorado, and a mobile sports betting application called BetMonarch.  Kukat held a BetMonarch account.  On March 30, 2023, Monarch received a message from the email address associated with Kukat's account requesting that his account be closed "due to a history of gambling addiction."  Monarch complied.

¶ 3　　In April 2023, Kukat emailed Monarch from the same address saying he did not send the March 30 message.  He asked Monarch

to reinstate his account, or alternatively, refund his winnings to a debit card. In a later phone call, a Monarch employee explained to Kukat that before reinstating the account, Monarch had to conduct an internal investigation to verify the conflicting requests. Kukat then sent the following emails to Monarch:

- If I don't get my money refunded back I will make an armed entry into your casino and cause mayhem. Return my money back to the card that I used to make [the] deposit and we are done. The longer I am asked to wait, the more I become agitated assholes.

- Fucking assholes left and right. I will hurt your business soon. We will all make news for the bad assholes.

- Pieces of shit. Fucking greedy ass bitches. I am preparing now to come.

- I am not on any exclusion list anywhere in the state of Colorado, and your casino closes my betting account because I am good at betting and because I am meant to cleanse your house for your sins. Soon and very soon.

¶ 4      Alarmed by these communications, Monarch alerted casino staff and law enforcement. Detective Kevin Sagar, the officer who received the report, attempted to contact Kukat by phone and email but received no response. Sagar also located a physical address for

2

Kukat in Durango, Colorado, sought assistance from the Durango Police Department, and issued a "be on the lookout" alert for Kukat. Contemporaneously, Sagar sought an arrest warrant.

¶ 5     The People charged Kukat with criminal extortion, § 18-3-207(1)(a), (b)(1), C.R.S. 2025; menacing, § 18-3-206, C.R.S. 2025; and harassment, § 18-9-111(1)(e), C.R.S. 2025.  The jury acquitted Kukat of extortion but found him guilty of menacing and harassment, and the trial court sentenced him to sixty days in the Department of Corrections' custody.  On appeal, Kukat argues that Sagar's testimony about Kukat's failure to respond to law enforcement violated his Fifth Amendment rights.  Kukat also challenges the tendered jury instructions.  We reject both contentions.

## II.     Officer Testimony

### A.     Additional Background

¶ 6     After Monarch elevated Kukat's communications to law enforcement, Sagar attempted to contact Kukat via phone and email but received no response.  Before trial, defense counsel asked the court to prohibit the prosecution from eliciting testimony from Sagar about Kukat's failure to respond.  Defense counsel argued

3

that such testimony implicated Kukat's Fifth Amendment right to remain silent and would lead the jury to infer guilt from Kukat's evasiveness. The court asked defense counsel to provide support that Kukat's Fifth Amendment right was implicated prior to arrest, but she offered none. The prosecution countered that it planned to elicit the testimony to demonstrate law enforcement's sense of urgency and the seriousness of the investigation. Noting that jurors may have lingering questions about law enforcement's attempts to contact Kukat if the court were to omit the question, the court concluded that the testimony was admissible.

¶ 7    Consistent with its ruling, the trial court allowed the prosecution to question Sagar about his attempts to contact Kukat. The prosecution asked whether Sagar received a response from Kukat, to which he responded, "No." The trial court instructed the jury to consider that testimony only for the limited purpose of understanding Sagar's investigation. Throughout trial, Monarch employees also testified about their reaction to Kukat's emails and how the matter was handled internally.

¶ 8    Kukat maintains on appeal that the trial court erred by admitting Sagar's testimony and that the limiting instruction did

not cure the error. According to Kukat, this testimony (1) had little relevance under CRE 401; (2) was unfairly prejudicial under CRE 403 because it allowed the jury to infer guilt from his silence; and (3) violated his Fifth Amendment right to remain silent and right against self-incrimination. The People counter that the testimony showed how seriously law enforcement treated Kukat's emails, which was relevant to determining the credibility of the threats. While we agree with Kukat's CRE 401 and 403 contentions, we conclude that any error in admitting the testimony was harmless and did not undermine Kukat's Fifth Amendment rights because his silence did not occur in a custodial setting.

## B.    Standard of Review

¶ 9    "A district court has broad discretion in determining the admissibility of evidence based on its relevance, probative value, and prejudicial impact." *People v. Morse*, 2023 COA 27, ¶ 39. We review these evidentiary rulings for an abuse of discretion. *Id.* A court "abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law." *Id.* An appellate court reverses if the abuse of discretion "substantially

influenced the verdict or affected the fairness of the trial proceedings." *Hagos v. People*, 2012 CO 63, ¶ 12 (citation omitted).

### C. CRE 401 and 403

¶ 10 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Relevant evidence is generally admissible, CRE 402, but may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or the needless presentation of cumulative evidence, CRE 403. We afford evidence its "maximum reasonable probative value and minimum reasonable prejudicial effect" because CRE 403 strongly favors admissibility of relevant evidence. *Morse*, ¶ 41.

¶ 11 Sagar's testimony had minimal relevance under CRE 401 and little probative value under CRE 403 because the affected Monarch witnesses testified about the seriousness of the threats, rendering Sagar's testimony unnecessarily cumulative. We are unpersuaded by the People's argument that the testimony served the relevant purpose of rebutting Kukat's claim that the threats were not credible. Kukat's failure to respond does little to show how

seriously law enforcement took the threats because this speaks to Kukat's actions, not the level of care the police exercised. *See People v. Welsh*, 80 P.3d 296, 306-07 (Colo. 2003) (the defendant's pre-arrest silence was not relevant to her insanity defense). The testimony further posed a prejudicial risk under CRE 403, as the jury could infer that Kukat did not respond because he had done something wrong. *Id.* at 307.

¶ 12 However, we conclude that any error in admitting the testimony was harmless. The jury saw copies of the emails Kukat sent and heard testimony from Monarch employees about the threatening nature of the communications. *See Pernell v. People*, 2018 CO 13, ¶ 22 (an error is harmless if there is no reasonable possibility that it contributed to the conviction). Additionally, the trial court provided the jury with a limiting instruction regarding the testimony, and we presume that the jury understood and followed the instruction. *People v. Brown*, 2022 COA 19, ¶ 62 (perceiving no abuse of discretion because the trial court gave a proper limiting instruction); *see also People v. Gillispie*, 767 P.2d 778, 780 (Colo. App. 1988) (a curative instruction is generally sufficient to overcome an evidentiary error). Finally, the jury

acquitted Kukat of extortion, indicating that the jurors parsed the evidence and were not substantially influenced by the challenged testimony. *People v. Quillen*, 2023 COA 22M, ¶ 39 (a split verdict indicates that improper evidence did not influence the jury).

### D. The Fifth Amendment

¶ 13　During trial, a prosecutor cannot comment on a defendant's constitutionally protected right to remain silent. U.S. Const. amend. V; Colo. Const. art. II, §§ 18, 25; *People v. Rios*, 2020 COA 2, ¶ 24. While a prosecutor should also avoid commenting on a defendant's pre-arrest silence, divisions of this court have held that Fifth Amendment protections do not extend to conduct that occurs in a noncustodial setting.[1] *Rios*, ¶ 24; *see also People v. Thomas*, 2014 COA 64, ¶ 26 (concluding that admission of testimony about the defendant's pre-arrest silence did not violate his Fifth Amendment right against self-incrimination because the silence did not arise during a custodial interrogation). When a court admits testimony about a defendant's pre-arrest silence, "reversible error

---

[1] "Noncustodial" silence refers to silence that occurs "while a person is not in custody." Black's Law Dictionary 1260 (12th ed. 2024).

8

exists only when the prosecutor uses the defendant's silence as a means of implying guilt." *Rios*, ¶ 24.

¶ 14     Sagar's attempts to contact Kukat and Kukat's failure to respond occurred before he was placed in custody. Because Kukat's silence did not occur in a custodial setting, and the prosecutor did not use Kukat's silence to imply guilt, Sagar's testimony did not implicate his Fifth Amendment rights, and we reject the contention of error.

### III.   Jury Instructions

#### A.   Additional Background

¶ 15     Before trial, Kukat moved to dismiss the charges as unconstitutionally vague and overbroad as applied. He argued that his communications did not constitute true threats and were protected under the First Amendment. Applying the factors the Colorado Supreme Court identified in *People in Interest of R.D.*, 2020 CO 44, ¶ 4, *abrogated in part by*, *Counterman*, 600 U.S. at 78, the trial court concluded that Kukat's "statements to Monarch unquestionably constitute true threats" and denied Kukat's challenge.

¶ 16    Initially focused on the extortion charge, Kukat later requested that the trial court instruct the jury on the definition of a "true threat" and related First Amendment freedom of speech principles. The trial court, noting that it had already rejected Kukat's constitutional challenge, asked why the existing instruction for extortion was insufficient.  Kukat argued that the instruction, which contained the language "substantial threat," warranted further guidance under the Supreme Court's decision in *Counterman*.  In rejecting the proposal, the trial court cautioned that a robust First Amendment instruction would confuse the jury because uttering a "true threat" was not an element of the offense and that it was inappropriate for the court to take selective language from case law.  However, it did provide the jury with limiting Instruction No. 17 to ensure compliance with *Counterman*'s "recklessness" mental state requirement:

> For the purpose of the crime of extortion, in order to find that the defendant made a substantial threat through any form of communication with another person, you must find that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence.

¶ 17    Kukat later argued that this instruction would be useful for the menacing charge, but the trial court declined to instruct the jury accordingly because Kukat did not timely request the instruction.  As to harassment, the court stated that Colorado Model Criminal Jury Instructions (COLJI-Crim.) guidance indicated that *Counterman* did not apply, and in any event, Kukat never requested the instruction relative to the harassment charge.  The jury acquitted Kukat of extortion but found him guilty of menacing and harassment.

¶ 18    Kukat argues on appeal that the trial court erred by failing to instruct the jury on the definition of a "true threat" and related First Amendment principles.  He further contends that the trial court should have applied limiting Instruction No. 17 to the menacing and harassment charges.  We discern no error.

## B.    Standard of Review

¶ 19    "The trial court has broad discretion to formulate jury instructions as long as they are correct statements of the law." *People v. Carter*, 2015 COA 24M-2, ¶ 39 (quoting *People v. Oram*, 217 P.3d 883, 893 (Colo. App. 2009)).  While we review de novo whether jury instructions accurately inform the jury of the

11

governing law, we review the trial court's decision to give a particular instruction for an abuse of discretion. *Id.*

### C. True Threats

¶ 20    True threats are "'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence'" and are not entitled to First Amendment Protection. *Counterman*, 600 U.S. at 74 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)); *People v. Morris*, 2025 COA 15, ¶ 26. In determining whether an electronic communication amounts to a true threat, Colorado courts look to a nonexhaustive list of factors: (1) the statement's role in a broader exchange; (2) the medium through which the statement was communicated; (3) the manner in which the statement was conveyed; (4) the relationship between the speaker and recipient; and (5) the subjective reaction of the intended recipient. *R.D.*, ¶ 4.

¶ 21    The trial judge weighed these factors before concluding that Kukat's statements to Monarch "unquestionably constitute[d] true threats," thereby rejecting Kukat's constitutional challenge. The case proceeded to trial, and the court provided the jury with instructions for extortion, menacing, and harassment that tracked the language of their respective statutes. We conclude that the trial

court accurately informed the jury of the governing law. *See People v. Schnorenberg*, 2025 CO 43, ¶ 60 (jury instructions that substantially track the language of the statute describing the crime are sufficient).

¶ 22    We further conclude that the trial court did not abuse its discretion by failing to provide the jury with a different First Amendment instruction. *See id.* Kukat cites no binding case law, and we are aware of none, requiring a trial court to instruct on true threats simply because the charges stem from the defendant's speech. *See People v. Counterman*, 2021 COA 97, ¶¶ 69-71 (explaining that neither *People v. Chase*, 2013 COA 27, nor *People v. Stanley*, 170 P.3d 782 (Colo. App. 2007), addressed whether a defendant is automatically entitled to an instruction on true threats when facing charges that implicate speech), *vacated on other grounds*, *Counterman*, 600 U.S. at 83. This, coupled with the trial court's correct determination that the charges were not unconstitutional as applied, leads us to conclude that the court did not abuse its discretion when it declined to instruct the jury on broad First Amendment principles.

## D. Instruction No. 17

¶ 23 In true-threats cases, the People must prove that the defendant had some subjective understanding of the statement's threatening nature, but under the First Amendment, a mental state of recklessness is sufficient. *Counterman*, 600 U.S. at 69. So, the People need only show that "the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id.*

¶ 24 Limiting Instruction No. 17 articulated this standard. The trial court applied this instruction to the extortion charge — which requires that the defendant make a "substantial threat" — to prevent the jury from convicting Kukat for acting with a mental state below the constitutional threshold. We are not persuaded by Kukat's argument that the court should have applied Instruction No. 17 to the menacing and harassment charges as well.

¶ 25 Menacing requires that the defendant "knowingly . . . place[] or attempt[] to place another person in fear of imminent serious bodily injury." § 18-3-206. Thus, to convict Kukat of menacing, the jury must have found beyond a reasonable doubt that he acted knowingly by issuing the threats. Because "knowingly" is a higher

14

mental state than *Counterman*'s "recklessly," there was no risk that the jury would find Kukat guilty for speech protected by the First Amendment. The trial court therefore did not err by denying Kukat's request to apply Instruction No. 17 to menacing. *People v. Casper*, 2025 COA 69, ¶¶ 28-34 (holding that instructions requiring the jury to determine whether the defendant knowingly made a threat survive constitutional scrutiny and do not require a *Counterman* instruction because "knowingly" is a more culpable mental state than "recklessly").

¶ 26     Finally, Kukat did not ask to apply Instruction No. 17 to the harassment charge. The issue is therefore unpreserved and we review for plain error. *People v. Conyac*, 2014 COA 8M, ¶ 53. An error is plain if, at the time it arose, "it was so clear cut and so obvious that a trial judge should have been able to avoid it" without the benefit of the party's action. *Id.* at ¶ 54. Such was not the case here, as the comments to the harassment model instruction clearly state that *Counterman* is not implicated. COLJI-Crim. 9-1:36 cmt. 4 (2024). While pattern jury instructions and accompanying comments are not binding on us, *People v. Hoskin*, 2016 CO 63, ¶ 20, we cannot say that the trial court plainly erred by referring to

15

this guidance from the Model Criminal Jury Instructions Committee of the Colorado Supreme Court. *See People v. Rester*, 36 P.3d 98, 102 (Colo. App. 2001) (pattern jury instructions and accompanying comments are meant to be guidelines).

## IV. Disposition

¶ 27    The judgment is affirmed.

JUDGE BROWN and JUDGE MEIRINK concur.